UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN S. PEREIRA, Chapter 7 Trustee for the    :
bankruptcy estate of Pawel Capala,    :
    :
            Plaintiff,    :  Case No. 17-cv-03434-SMG
    :  **(Related proceeding to**
v.    :  **Case No. 07-cv-3629 (ILG))**
    :
PAWEL CAPALA, JENNIFER CAPALA, and    :  **ECF CASE**
FIRE HILL HOLDINGS, LLC,    :
    :
            Defendants.    :  **<u>REDACTED VERSION</u>**
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<br>

## PLAINTIFF'S MEMORANDUM OF LAW<br><u>IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT</u>

<br>

John P. Campo
Scott M. Kessler
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Tel. No. (212) 880-3800

*Counsel for the Plaintiff John S. Pereira,*
*Chapter 7 Trustee for the bankruptcy estate*
*of Pawel Capala*

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

LEGAL STANDARDS ................................................................................................... 5

   I.  Motion for Summary Judgment ............................................................................. 5

   II.  New York Debtor and Creditor Law ..................................................................... 6

      a.  DCL § 276 ....................................................................................................... 6

      b.  DCL § 273-A ................................................................................................... 7

        i.  "Fair Consideration" Under the DCL ..................................................... 7

ARGUMENT .................................................................................................................. 8

   I.  Plaintiff Is Entitled to Summary Judgment On His Claims For Avoidance and Preservation of Constructive Fraudulent Transfer Pursuant to N.Y. Debt. & Cred. L § 276 Based On Actual Intent to Delay, Hinder, or Defraud ........................... 8

   II.  Plaintiff Is Entitled to Summary Judgment On His Claims For Avoidance and Preservation of Constructive Fraudulent Transfer pursuant to N.Y. Debt. & Cred. L § 273-A .......................................................................................................... 12

      a.  Defendants Cannot Meet Their Burden to Demonstrate Good Faith ......... 13

      b.  Defendant Jennifer Capala Cannot Meet Her Burden To Demonstrate The Adequacy of Consideration ....................................................................... 15

   III.  Plaintiff is Entitled to Summary Judgment as to Defendant Jennifer Capala's Separate Property Affirmative Defense ................................................................ 18

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

a *Aaron*, *Aaron v. Mattikow*,
  225 F.R.D. 407 (E.D.N.Y. 2004) ............................................................................9

*ACLI Gov't Sec., Inc. v. Rhoades*,
  653 F. Supp. 1388 (S.D.N.Y. 1987), *aff'd sub nom. ACLI Gov. v. Rhoades*,
  842 F.2d 1287 (2d Cir. 1988) .........................................................................8, 16

*BFP v. Resolution Trust Corp.*,
  511 U.S. 531 (1994) ......................................................................................7, 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................11, 12, 18

*Cimons v Cimons*,
  53 AD3d 125 (2d Dep't 2008) ...............................................................................17

*FDIC v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994) .....................................................................................18

*Gortat et al. v Capala Brothers, et. al.*,
  Case No. 7-cv-3629 (ILG) (SMG) .................................................................. passim

*Greene v. Newman (In re Newman)*,
  11 B.R. 628 (Bankr. S.D.N.Y.), *aff'd,* 15 B.R. 658 (S.D.N.Y. 1981) ...................6, 7

*HBE Leasing Corp. v. Frank*,
  48 F.3d 623 (2d Cir. 1995) ...............................................................................7, 13

*Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*,
  149 B.R. 40 (Bankr. S.D.N.Y. 1992) .......................................................................11

*In re Dranichak*,
  No. 10-63042, 2012 WL 2343700 (Bankr. N.D.N.Y. June 20, 2012), *aff'd sub
  nom. Dranichak v. Rosetti,* 493 B.R. 370 (N.D.N.Y. 2013) ....................................12

*In re Dreier LLP*,
  452 B.R. 391 (Bankr. S.D.N.Y. 2011) ......................................................13, 14, 15

*In re Fanelli*,
  263 B.R. 50 (Bankr. N.D.N.Y. 2001) .......................................................................12

*In re Furio*,
  77 F.3d 622 (2d Cir. 1996) .....................................................................................12

*In re Jacobs*,
    394 B.R. 646 (Bankr. E.D.N.Y. 2008)..........................................................................4, 6, 7, 9

*In re Sharp*,
    403 F.3d at 56 ............................................................................................................................4

*Judson v. Judson*,
    255 A.D.2d 656, 679 N.Y.S.2d 465 (3d Dep't 1998) ............................................................21

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)......................................................................................................5

*Law Offices of Bruce E. Baldinger, LLC v. Barchha*,
    No. 13 CV 9124 PAC, 2015 WL 1284266 (S.D.N.Y. Mar. 20, 2015)..................................1, 5

*Leser v. U.S. Bank Nat. Ass'n*,
    No. 09-CV-2362 KAM, 2013 WL 3788877 (E.D.N.Y. July 18, 2013) ...............................13

*Lippe v. Bairnco Corp.*,
    249 F. Supp. 2d 357 (S.D.N.Y. 2003).....................................................................................17

*Lischynsky v. Lischynsky*,
    120 A.D.2d 824, 501 N.Y.S.2d 938 (3d Dep't 1986) ............................................................19

*Lynn v Kroenung*,
    97 A.D.3d 822, 949 N.Y.S.2d 144 (2d Dep't 2012) ..............................................................17

*Matter of Russo*,
    1 B.R. 369 (Bankr. E.D.N.Y. 1979)............................................................................8, 10, 11

*Meiri v. Dacon*,
    759 F.2d 989 (2d Cir. 1985) *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88
    L.Ed.2d 74 (1985) .....................................................................................................................8

*MFS/Sun Lift Trust–High Yield Series v. Van Dusen Airport Servs. Co.*,
    910 F.Supp. 913 (S.D.N.Y. 1995) ............................................................................................6

*Nw. Mut. Life Ins. Co. v. Fogel*,
    78 F. Supp. 2d 70 (E.D.N.Y. 1999) ........................................................................................18

*Saasto v. Saasto*,
    211 A.D.2d 708, 621 N.Y.S.2d 660 (2d Dep't 1995) ............................................................19

*SEC v. Universal Express, Inc.*,
    2008 WL 1944803 (S.D.N.Y. 2008)...................................................................................7, 13

*Securities Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)...............................................................................6, 11

*Tsigler v. Kasymova*,
   73 A.D.3d 1159, 902 N.Y.S.2d 128 (2d Dep't 2010) ............................................19

*Tube City IMS, LLC v. Anza Capital Partners, LLC*,
   No. 14-cv-1783 (PAE), 2016 WL 5864887 (S.D.N.Y. Oct. 6, 2016) ..............12, 15

*United States v. Mazzeo*,
   306 F.Supp.2d 294 (E.D.N.Y. 2004) ..................................................................16

*United States v. McCombs*,
   30 F.3d 310 (2d Cir. 1994)..................................................................................6, 8

**Statutes**

11 U.S.C. § 542 ...........................................................................................................22

11 USC § 523 (a)(2) ....................................................................................................12

11 USC §§ 544(b), 550(a) and 551 ..............................................................................5

N.Y. Debt. & Cred. L § 273-A .............................................................................. *passim*

N.Y. Debt. & Cred. L § 273-A's............................................................................ *passim*

N.Y. Debt. & Cred. L § 276................................................................................... *passim*

Domestic Relations Law § 236(B)(1)(c) ....................................................................19

**Rules**

Fed.R.Civ.P. 56...........................................................................................................5, 18

## PRELIMINARY STATEMENT

Plaintiff John Pereira, the Chapter 7 Trustee for the Estate of Pawel Capala (the "Plaintiff," or the "Trustee"), moves for summary judgment as to his claims to avoid certain fraudulent transfers on two bases:

1. No rational trier of fact could find that Debtor Pawel Capala's conveyance to his then-spouse, Defendant Jennifer Capala, of the properties in dispute was not made with actual intent to hinder, delay or defraud his creditors, and consequently the conveyances were fraudulent under New York's Debtor and Creditor Law (the "DCL") § 276.

2. No rational trier of fact could find that Debtor Pawel Capala's conveyance to this then-spouse, Defendant Jennifer Capala, of the properties in dispute was made for "fair consideration," which pursuant to the DCL requires exchange of fair value *and* good faith, and consequently the conveyances were fraudulent under DCL § 273-A.

A party moving for summary judgment "must prevail where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Law Offices of Bruce E. Baldinger, LLC v. Barchha,* No. 13 CV 9124 PAC, 2015 WL 1284266, at *2 (S.D.N.Y. Mar. 20, 2015). This Court is, of course, well-acquainted with the record in this case, and the related *Gortat* litigation.[1] Fortunately, the facts necessary to support this Motion are straightforward:

1. On May 13, 2013, a jury returned a verdict in the *Gortat* Litigation against defendants Pawel Capala, Robert Capala, and Capala Brothers, Inc., for violations of the Fair Labor Standards Act and New York Labor Law.  *See* Statement of Material Facts ("SOMF") ¶ 1, Declaration of Scott Kessler, dated December 7, 2018 (hereinafter the "Kessler Decl."), ¶ 1, Exh. 1.

2. On June 19, 2013, the District Court entered a money judgment against the aforementioned defendants, jointly and severally, for $293,212.41 (the "*Gortat* Judgment").  SOMF, ¶ 2; Kessler Decl., ¶ 2, Exh. 2.

3. On May 28, 2013, two weeks after the jury handed down its verdict, and just over two weeks prior to the *Gortat* Judgment, Jennifer Capala – Pawel Capala's then-spouse – incorporated Defendant Fire Hill Holdings, LLC ("Fire Hill Holdings"), of which she is the sole member.  SOMF, ¶ 3; Kessler Decl., ¶ 3, Exh. 3.

---

[1] *Gortat et al. v Capala Brothers, et. al.,* Case No. 7-cv-3629 (ILG) (SMG) (the "*Gortat* Litigation").

4.  On June 3, 2013, a week after Jennifer Capala's incorporation of Fire Fill Holdings, and a mere two weeks prior to the *Gortat* Judgment being entered, Pawel and Jennifer executed a document entitled "Separation and Property Settlement Agreement" (the "First Separation Agreement"). In the First Separation Agreement, Pawel purported to transfer his wife the entirety of his interest in three properties that he and Jennifer owned together:

   a.  246 Frost Street, Brooklyn (the "Frost Street Property");

   b.  152 Fire Hill Road, Spencertown, New York (the "Spencertown Property");

   c.  Stagecoach Road, Hillsdale, New York (the "Hillsdale Property," and together with the Frost Street Property and the Spencertown Property, the "Properties," and the transfers of the Properties the "Capala Transfers").

   SOMF, ¶ 4; Kessler Decl., ¶ 4, Exh. 4.

5.  On June 13, 2013, a second Separation and Property Separation Agreement (the "Second Separation Agreement"), also dated June 3, 2013, was stamped as Received by the Country Clerk's, office, and on June 17, 2013, the same document was stamped Received by the Chambers of the Hon. Richard Mott. This second Separation and Property Settlement Agreement is marked with the index number of the divorce action.  SOMF, ¶ 5; Kessler Decl., ¶ 5, Exh. 5.

6.  Both the First Separation Agreement and Second Separation Agreement (together, the "Separation Agreements")[2] list the combined estimated value of the Properties at the time of transfer at $1,900,000.  SOMF, ¶ 6; Kessler Decl., ¶ 4, 5, Exhs. 4, 5.

7.  On June 3, 2013, the Capala Transfers were executed.  After the Capala transfers were executed, also on June 3, 2013, Jennifer Capala transferred the Hillsdale Property and the Frost Street Property (the "Transferred Properties") from herself to Fire Hill Holdings (the "Fire Hill Transfers").  Both the Capala Transfers and the Fire Hill Transfers occurred after the jury verdict but before the judgment was entered against Pawel Capala in the *Gortat* Litigation. SOMF, ¶ 7; Kessler Decl., ¶ 1, 2, 6; Exhs. 1, 2, 6.

8.  On December 18, 2013, the Honorable Richard Mott issued Findings of Fact and Conclusions of Law (the "2013 FOF") in connection with the Judgment of Divorce (the "2013 Divorce Judgment") in the Capala's divorce action in New York Supreme Court, Country of Columbia (Index No. 6093-13) (the "2013 Divorce Action").  SOMF, ¶ 8; Kessler Decl., ¶ 7, Exh. 7.

---

[2] The Separation Agreements state that they were "entered into as part of an anticipated divorce action in the Supreme Court of the State of New York."  Kessler Decl., Exhs. 4, 5.

9. Pawel Capala filed for bankruptcy protection on June 12, 2015.  SOMF, ¶ 9; Kessler Decl., ¶ 8, Exh. 8.

10. On February 13, 2017, the District Court entered an Amended Judgment in the *Gortat* Litigation, which amended the *Gortat* Judgment to reflect the award of attorneys' fees in the amount of $508,554.00, and costs in the amount of $57,869.50 (the "Amended *Gortat* Judgment"). SOMF, ¶ 10; Kessler Decl., ¶ 9, Exh. 9.

11. The Amended *Gortat* Judgment remains unpaid.  SOMF, ¶ 11; Kessler Decl., ¶ 10, Exh. 10, at 18 (Report and Recommendation of Judge Gold dated November 6, 2018) (hereinafter the "Gold R&R").[3]

12. On June 8, 2017, Plaintiff, Chapter 7 Trustee for the bankruptcy estate of Pawel Capala, filed the Complaint in this action, seeking to avoid the Capala Transfers. SOMF, ¶ 15; Kessler Decl., ¶ 12, Exh. 12.

13. On September 12, 2018, over fifteen months after the filing of the Complaint, Defendant Jennifer Capala filed an Amended Answer, in which she raised new affirmative defenses for the first time, including her Separate Property Defense (defined and discussed below).  SOMF, ¶ 17; Kessler Decl., ¶ 14, Exh. 13.

14. On October 3, 2018, after the deposition of Defendant Jennifer Capala's expert, counsel for Defendant Jennifer Capala, for the first time, asserted that the terms of the 2013 FOF and 2013 Divorce Judgment were erroneous. SOMF, ¶ 18; Kessler Decl., ¶ 15.

15. At no point between the entry of the 2013 FOF and the 2013 Divorce Judgment in December 2013, and October 3, 2018, did any Defendant, nor any Defendants' counsel, assert that the terms of the 2013 FOF and/or the 2013 Divorce Judgment were erroneous.  SOMF ¶ 19, Kessler Decl., ¶ 16.

16. On October 23, 2018, Defendant Jennifer Capala filed a motion, by order to show cause, seeking to have the 2013 Divorce Action re-opened, and the terms of the 2013 Divorce Judgment set aside in favor of those in the First Separation Agreement (the "2018 Divorce Motion").  SOMF, ¶ 20; Kessler Decl., ¶ 17, Exh. 14.

17. On November 8, 2018, the Honorable Judge Mott entered a Corrected Findings of Fact and Conclusions of Law, and a Corrected Judgment of Divorce, in the 2013 Divorce Action (together the "2018 Divorce Judgment). SOMF, ¶ 21; Kessler Decl., ¶ 18, 19, Exhs. 15, 16.

18. At no point between the filing of the 2018 Divorce Motion and the entry of the 2018 Divorce Judgment did Defendants' counsel give notice to the Plaintiff that

---

[3] The Gold R&R was filed in the *Gortat* Litigation, which was been consolidated with this action.  *See* D.E. 45.

Defendants sought to nullify the 2013 Judgment of Divorce.   SOMF, ¶ 22; Kessler Decl., ¶ 20.

Typically when moving for summary judgment, the moving party bears the burden to demonstrate that there are no issues of material fact.  Here, that would mean the Plaintiff must demonstrate that there are no material facts at issue with regard to Pawel Capala's intent (DCL § 276), and with regard to the lack of fair consideration (DCL § 273-A).   However, this case diverges from the typical case in critical ways.  As this Court recently noted, in connection with a related fraudulent transfer of property by Pawel's company, Capala Brother's, Inc., "[a] plaintiff alleging fraud may satisfy his burden by relying on 'badges of fraud.' *In re Sharp*, 403 F.3d at 56."  Kessler Decl., ¶ 10, Exh. 10, at 17.  Moreover, as this Court held there, so too here: "the underlying facts" of this case "provide a sufficient basis for a finding of actual intent to defraud." *Id.*

When determining whether the requisite badges of fraud are present, courts consider:

    (a)    the lack or inadequacy of consideration;

    (b)    the family, friendship or close associate relationship between the parties;

    (c)    the retention of possession, benefit or use of the property in question;

    (d)    the financial condition of the party sought to be charged both before and after the transaction in question;

    (e)    the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

    (f)    the general chronology of the events and transactions under inquiry.

*See In re Jacobs*, 394 B.R. 646, 659 (Bankr. E.D.N.Y. 2008) (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)).

As discussed below, every one of these badges of fraud is present here.  Put simply, the only reasonable inference one can draw from the undisputed facts of this case is that the Capalas intended to secrete Pawel's assets – virtually all of which were his portions of the marital property that comprised the Properties – from being available to satisfy the judgment that was to be entered imminently in the *Gortat* Litigation.  Furthermore, and critically for adjudication of this Motion, given the presence of multiple badges of fraud, the burden shifts to Defendants Jennifer Capala and Fire Hill Holdings ("Defendants") to demonstrate the validity of the conveyances.  This they cannot do.  As such, summary judgment must be granted on Plaintiff's claims and the transfers of the Transferred Properties from Pawel Capala to Jennifer Capala must be avoided pursuant to 11 USC §§ 544(b), 550(a) and 551.[4]

## LEGAL STANDARDS

I.      **Motion for Summary Judgment**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Though courts "constru[e] the evidence in the light most favorable to the nonmoving party," *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 205 (2d Cir. 2005) (internal quotation omitted), "the moving party must prevail '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Law Offices of Bruce E.*

---

[4] Plaintiff also moves for summary judgment on Defendants' affirmative defense that Jennifer Capala purchased the Properties with her separate funds, or that she paid for the renovations to the Frost Street Property with her separate funds (the "Separate Property Defense").  *See infra,* Point III.  As explained below, Defendants produced no admissible evidence whatsoever that would support the Separate Property Defense.  There being a total lack of evidence, no rational fact finder could find that Defendants have met their burden, and her affirmative defense fails.  Without the Separate Property Defense, if the relief sought in this Motion on Plaintiff's claims is granted, there will be no defense to equitable distribution of the Properties, and Debtor Pawel Capala's share of the Properties will become property of the Estate.

*Baldinger, LLC v. Barchha,* No. 13 CV 9124 PAC, 2015 WL 1284266, at *2 (S.D.N.Y. Mar. 20, 2015) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.   New York Debtor and Creditor Law

"The trustee in bankruptcy may invoke applicable state law, such as the New York Debtor and Creditor Law, to avoid a transfer proscribed under such law if, in accordance with Code [§] 544(b), there actually existed a creditor holding an unsecured claim who could avoid the transfer. In such case, the trustee may step into the shoes of the unsecured creditor and set aside the transfer for the benefit of the estate." *Greene v. Newman (In re Newman),* 11 B.R. 628, 633 (Bankr. S.D.N.Y.), *aff'd,* 15 B.R. 658 (S.D.N.Y. 1981). The *Gortat* Plaintiffs are such creditors.[5]  As such, the Trustee may bring claims under the DCL to avoid the Capala Transfers. The Trustee does so in this Motion based on DCL § 276 and DLC § 273-A.

### a.   DCL § 276

Under DCL § 276, a transfer will be set aside as fraudulent regardless of the adequacy of the consideration given for the transfer where there is actual intent to hinder, delay, or defraud creditors.  *United States v. McCombs,* 30 F.3d 310, 328 (2d Cir. 1994).  Furthermore, "[i]t is the intent of the transferor [here, Debtor Pawel Capala] and not that of the transferee [here, Defendant Jennifer Capala] that is dispositive." *Securities Inv. Prot. Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1059 n. 5 (2d Cir. 1995)).

Typically, "[t]he burden of proving actual intent is on the party seeking to set aside the conveyance." *MFS/Sun Lift Trust–High Yield Series v. Van Dusen Airport Servs. Co.,* 910 F.Supp. 913, 934–35 (S.D.N.Y. 1995).  Nevertheless, as the Court in *In re Jacobs* observed:

---

[5] A "creditor" is defined by the DCL as any person "having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."  N.Y. Debt. & Cred. Law § 270 (McKinney).

> Actual fraudulent intent is rarely susceptible to direct evidence and may be inferred from the circumstances surrounding the transaction. As the Second Circuit has explained: "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

394 B.R. 646, 659 (*quoting In re Sharp Int'l Corp.*, 403 F.3d at 56).  Such circumstances are referred to as badges of fraud.  Where multiple badges of fraud are present, the burden shifts to the defendant to demonstrate the validity of the conveyances.  *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 541 (1994) (defining "badges of fraud" as "objective facts ... [that] raise a rebuttable presumption of actual fraudulent intent").

**b.    DCL 273-A**

DCL § 273-A provides that

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

"Neither actual intent to defraud nor insolvency at the time of the transfer need be shown."  *Greene v. Newman (In re Newman)*, 11 B.R. at 634.

**i.    "Fair Consideration" Under the DCL**

Pursuant to the DCL, "fair consideration" has two components: "the exchange of fair value and good faith—and both are required."  *SEC v. Universal Express, Inc.,* 2008 WL 1944803, at *5 (S.D.N.Y. 2008).  Critically, the Second Circuit has interpreted "good faith" as follows: "the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme."  *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 636 (2d Cir. 1995).

Furthermore, "transactions within the immediate family are to be carefully scrutinized because fraud is so easily practiced and concealed under the cover of the marriage relation." *Matter of Russo*, 1 B.R. 369, 373 (Bankr. E.D.N.Y. 1979)) (internal citations and quotations omitted). Relatedly, "where the evidentiary facts as to the nature and value of the consideration are within the transferee's control, the burden of coming forward with evidence on the fairness of the consideration shifts to the transferee." *ACLI Gov't Sec., Inc. v. Rhoades,* 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd sub nom. ACLI Gov. v. Rhoades*, 842 F.2d 1287 (2d Cir. 1988).

## ARGUMENT

I.   **Plaintiff Is Entitled to Summary Judgment On His Claims For Avoidance and Preservation of Constructive Fraudulent Transfer Pursuant to N.Y. Debt. & Cred. L § 276 Based On Actual Intent to Delay, Hinder, or Defraud**

As mentioned above, under DCL § 276, a transfer will be set aside as fraudulent regardless of the adequacy of the consideration given for the transfer where actual intent to hinder, delay, or defraud creditors is demonstrated. *United States v. McCombs,* 30 F.3d 310, 328 (2d Cir. 1994). While intent involves state of mind and is thus not typically susceptible to determination on summary judgment, "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Relatedly, because

> [a]ctual fraudulent intent is rarely susceptible to direct evidence [it] may be inferred from the circumstances surrounding the transaction. As the Second Circuit has explained: "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

*In re Jacobs*, 394 B.R. at 659 (quoting *In re Sharp Int'l Corp.*, 403 F.3d at 56). When determining whether the requisite badges of fraud are present, courts consider:

> (1)   the lack or inadequacy of consideration;
>
> (2)   the family, friendship or close associate relationship between the parties;
>
> (3)   the retention of possession, benefit or use of the property in question;
>
> (4)   the financial condition of the party sought to be charged both before and after the transaction in question;
>
> (5)   the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
> (6)   the general chronology of the events and transactions under inquiry.

*Id.; see also Aaron*, *Aaron v. Mattikow,* 225 F.R.D. 407, 413 (E.D.N.Y. 2004) (noting "badges of fraud" circumstances include "suspicious timing of the transfers or transfers that are unusual or hasty").

Here, every single one of these badges of fraud is present.

> (1)   The conveyances of the Properties were transfers between spouses. Kessler Decl., ¶ 4; Exh. 4.
>
> (2)   Jennifer Capala made another transfer of the Transferred Properties from herself to Fire Hill Holdings, an entity she created only for that purpose. SOMF, ¶ 7; Kessler Decl., ¶ 6; Exh. 6.
>
> (3)   Pawel Capala, aside from his interests in the Properties, had insufficient assets to pay the judgment both prior to and after the Judgment.  SOMF, ¶ 12; Kessler Decl., ¶ 11; Exh. 11.
>
> (4)   On June 3, the First Separation Agreement was executed. On June 3, 2013, the Capala Transfers were executed.  After the Capala transfers were executed, also on June 3, 2013, Jennifer Capala transferred the Hillsdale Property and the Frost Street Property from herself to Fire Hill Holdings. The Capala Transfers and the Fire Hill Transfers occurred after the jury verdict and before the judgment against Pawel Capala in the *Gortat* Litigation. SOMF, ¶ 7; Kessler Decl., ¶ 1, 2, 4, 6; Exhs. 1, 2, 4, 6.

(5)     Pawel continued to live in the marital property allegedly transferred. SOMF, ¶ 14; Kessler Decl., ¶ 21, Exh. 17, at 139:21-24; ¶22, Ex. 18, at 95:22-96:2.

(6)     The Capala Transfers were made for no present, tangible consideration. *See, e.g.,* SOMF, ¶ 8; Kessler Decl., ¶ 7, Exh. 7 (demonstrating that the only consideration supplied by Jennifer Capala was that she would forgo her right to have Pawel Capala contribute to the children's educational expenses).

(7)     Neither the Judgment, nor the Amended Judgment, were ever paid. SOMF, ¶ 11; Kessler Decl., ¶ 10, Exh. 10 (Gold R&R, at 18).

Here, given "the general chronology of the events and transactions under inquiry" – transactions which occurred between spouses on the eve of a judgment that would essentially bankrupt Pawel Capala, and which resulted in the *Gortat* judgment creditors being completely unable to satisfy their judgment – a presumption of fraud is more than warranted.[6]

*Matter of Russo* is instructive. There, the Court found that a husband's conveyance of real property – his interest in their home – was made with actual intent to hinder, delay and defraud. That conveyance was made (1) while litigation was pending against the husband, (2) without any present, tangible consideration, (3) without any payment being made after the judgment was rendered against the husband, and (4) just prior to the husband's filing of a voluntary petition in bankruptcy after the judgment was rendered.[7]  *Matter of Russo,* 1 B.R. 369, 382–83 (Bankr. E.D.N.Y. 1979) ("From the foregoing, it is apparent that numerous "badges of fraud" attached to

---

[6] N.B. The "transactions under inquiry," i.e., the Capala Transfers, took place under the cover of a separation agreement that was ostensibly entered into in connection with the parties' divorce, which Defendant has represented is based on long-standing issues between the spouses.  *See* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 50:3-9). However, despite the allegedly long-standing basis for the divorce, Defendant's mother, Gesine Krogh, testified that Jennifer Capala had never once during her marriage to Pawel Capala mentioned the possibility of divorcing him prior to the commencement of the divorce proceeding. Kessler Decl., ¶ 23, Ex. 19 (Deposition of Gesine Krogh, at 102:14-17).

[7] In addition, Russo continued to live in the martial residence – a factor relevant to the Spencertown Property, which was the Capala's marital residence.  SOMF, ¶ 14 Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 139:21-24); Kessler Decl., ¶ 22, Ex. 18 (P. Capala Dep., 95:22-96:2); *cf. Matter of Russo,* 1 B.R. 369, 382 (Bankr. E.D.N.Y. 1979) ("No effort to hinder or delay creditors is more severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied.") (internal citations omitted).

the October, 1973 conveyance . . . They all point to the fact that it was made because Russo was the defendant in the Gross action for substantial money damages and wished to divest himself of this asset so, that if he lost the lawsuit, the property would not be in jeopardy.").

*Matter of Russo* is thus on all fours with this case, where all those factors are also present. As such, where the requisite badges of fraud are present, as they are here, the burden shifts to the defendant to demonstrate the validity of the conveyances. *See BFP v. Resolution Trust Corp.,* 511 U.S. at 541 (defining "badges of fraud" as "objective facts ... [that] raise a rebuttable presumption of actual fraudulent intent").   Accordingly, to defeat summary judgment, Defendants must demonstrate with admissible facts that genuine issues of fact exist as to whether, when Pawel made the conveyances of the Transferred Properties, Pawel did not have the requisite intent to defraud, delay, or hinder his creditors from collecting on the *Gortat* Judgment.[8]  Genuine issues of material fact do not exist if, "after adequate time for discovery and upon motion, [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, Jennifer Capala has no evidence sufficient to counter the presumption of fraud. The only evidence she could possibly muster is the self-serving testimony of her former spouse, the Debtor Pawel Capala.  Such 'evidence' is insufficient to defeat this Motion.  *See Hudson Valley Water Resources, Inc. v. Boice (In re Boice),* 149 B.R. 40, 47 (Bankr. S.D.N.Y. 1992) ("'[t]he debtor's unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts.'") (quoting 3 Lawrence P. King, *Collier on Bankruptcy* ¶ 523.10,

---

[8] *See Securities Inv. Prot. Corp. v. Stratton Oakmont, Inc.,* 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *HBE Leasing Corp. v. Frank*, 61 F.3d at 1059 n. 5) ("[i]t is the intent of the transferor [here, Debtor Pawel Capala] and not that of the transferee [here, Defendant Jennifer Capala] that is dispositive.").

11

at 523-71-72 (15th ed. 1992)); *In re Furio,* 77 F.3d 622, 624 (2d Cir. 1996) (same) (*quoting Hudson Valley*); *In re Fanelli,* 263 B.R. 50, 60 (Bankr. N.D.N.Y. 2001) (same);[9] *Celotex,* 477 U.S. at 322 (party bearing the burden of proof at trial bears burden of proof on summary judgment).

II.   **Plaintiff Is Entitled to Summary Judgment On His Claims For Avoidance and Preservation of Constructive Fraudulent Transfer pursuant to N.Y. Debt. & Cred. L § 273-A**

DCL § 273-A provides that:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Here, there is no dispute that Pawel Capala was a defendant in an action for money damages when the conveyances were made, and that after the judgment in the *Gortat* Litigation was docketed against him, that Judgment went unsatisfied.[10]   Thus, the only question is whether the conveyance was made for fair consideration.

Importantly "[i]n instances where the allegedly fraudulent conveyance took the form of an intra-family transfer, courts have been particularly apt to shift the burden to prove fair consideration to the parties to the transfer." *Tube City IMS, LLC v. Anza Capital Partners, LLC,*

---

[9]   While the analysis in these cases pertained to discharge pursuant to 11 USC § 523 (a)(2) [Exceptions to Discharge], the principle is equally applicable here. *See, e.g., In re Dranichak,* No. 10-63042, 2012 WL 2343700, at *7 (Bankr. N.D.N.Y. June 20, 2012), *aff'd sub nom. Dranichak v. Rosetti,* 493 B.R. 370 (N.D.N.Y. 2013) (analyzing § 727(a)(4) [Discharge] under which, as under DCL 276, "fraudulent intent must be shown by actual [ ] fraud," and holding that "[i]n determining whether an inference of fraud arises, the court's focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of [honest] intent that the proof leads the court to disbelieve the debtor") (brackets in original).

[10]   To argue otherwise would be literally incredible, given Your Honor's recent holding in the Gold R&R. *See* Kessler Decl., ¶ 10, Exh. 10, at 9 (Gold R&R) ("Capala Brothers, Inc. was a defendant in this action at that time; indeed, a trial date had been scheduled just two weeks prior to the transfer. Min. Entry dated Feb. 8, 2013 Docket Entry 303. It is also undisputed that defendants have failed to satisfy the judgments entered against them. The second and third showings required to prevail under section 273-a have thus been established.").

No. 14-cv-1783 (PAE), 2016 WL 5864887, at *4 (S.D.N.Y. Oct. 6, 2016).  That is precisely the case here, and, as described further below, Defendants cannot meet their burden.

### a.    Defendants Cannot Meet Their Burden to Demonstrate Good Faith

As mentioned above, absent "good faith," a transferee cannot meet DCL 273-A's requirement of "fair consideration."   *SEC v. Universal Express, Inc.,* 2008 WL 1944803, at *5 (S.D.N.Y. 2008) ("fair consideration" has two components: "the exchange of fair value and good faith—and both are required").  Thus, if Defendants cannot demonstrate good faith in connection with the Capala Transfers, Plaintiff will succeed on its claim for avoidance pursuant to N.Y. Debt. & Cred. L § 273-A.  The 'good faith' requirement is satisfied only if the transferee acted without either actual or constructive knowledge of any fraudulent scheme."  *HBE Leasing Corp. v. Frank*, 48 F.3d at 636.

"Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry."  *HBE Leasing Corp. v. Frank*, 48 F.3d at  636.[11]  As the court in *In re Dreier LLP* noted

> [C]ourts that have considered the "good faith" element of state fraudulent conveyance statutes have implied that "good faith" requires an inquiry whether there was a "failure to deal honestly, fairly and openly." *Southern Indus., Inc. v. Jeremias,* 66 A.D.2d 178, 411 N.Y.S.2d 945 (2d Dep't 1978). Those cases consider whether the transaction carries the earmarks of a good faith bargain: "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Id.* citing *Sparkman*

---

[11] Such circumstances exist here, as already demonstrated above in connection with the 'badges of fraud' analysis under DCL 276.  *See infra*, at 9-11; *see also Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 KAM, 2013 WL 3788877, at *11 (E.D.N.Y. July 18, 2013) (holding that "the evidence discussed [in connection with the 'badges of fraud' analysis under DCL 276] suggested that [the counterclaim defendants] were not acting in good faith").  As was the case with "actual intent" analysis under DCL § 276, actual knowledge is rarely susceptible to direct evidence.

> *& McLean Co. v. Derber,* 4 Wash.App. 341, 481 P.2d 585 (1971)).
> *See also Ostashko v. Ostashko,* No. 00–CV–7162 (ARR), 2002
> WL 32068357, at *22–23 (E.D.N.Y. 2002); *Interpool Ltd. v.
> Patterson,* 890 F.Supp. 259, 267 (S.D.N.Y. 1995); *Eisenberg v.
> Feiner* (*In re Ahead By A Length, Inc.*), 100 B.R. 157, 169 (Bankr.
> S.D.N.Y. 1989).

452 B.R. 391, 447 (Bankr. S.D.N.Y. 2011).

Defendants fail this test on every front.  No rational fact finder could determine that the Capala Transfers "carrie[d] the earmarks of a good faith bargain."  In light of the standards above, the Court must ask whether a rational fact finder could determine (1) that Jennifer Capala could have had an ***honest*** belief in the propriety of Pawel transferring his only assets of any significant value to her on the eve of a significant money judgment against him; and relatedly (2) that Jennifer Capala could have had "no knowledge of the fact that [Pawel's transfer of the Properties would]" make it difficult or impossible for his judgment creditors to collect on the judgment; and (3) that the Capala's transfer of the Transferred Properties was anything but a "failure to deal honestly, fairly and openly" with Pawel's creditors.

Given the facts of this case, it is impossible for any rational fact finder to come to those conclusions.  Jennifer Capala accepted conveyance of the Transferred Properties at a time when she must have been aware that a jury verdict had been entered against her husband and further that Pawel Capala had essentially no assets other than his interests in the Transferred Properties. If she had been uncertain of the effect of the judgment, "inquir[ing] further" would have been as simple as asking her husband Pawel Capala how he intended to pay the judgment that was imminently to be entered against him, or reviewing their joint tax returns to determine what assets Pawel Capala had independent of the marital property represented by the Properties.[12]

---

[12] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

There is no evidence that she did either, and it is her burden to provide such evidence, given the nature of the Capala Transfers as an intra-family transaction.[13]  *See Tube City*, 2016 WL 5864887, at *4.

No rational finder of fact can conclude that Jennifer Capala should not have known that "the purpose of the trade, so far as [Pawel Capala] was concerned, was the defrauding of his creditors.'"[14]  *See, e.g., In re Dreier LLP*, 452 B.R. 391, 446 (Bankr. S.D.N.Y. 2011) (the DCL "requirement of 'good faith" refers solely to 'whether the grantee knew, or should have known, that he was not trading normally, but that ... the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.'") (quoting 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 295, at 512 (1940)).  Put simply, the Capala Transfers took "unconscionable advantage" of Pawel Capala's creditors by stripping them of any way collect the damages suffered because of Pawel's intentional violations of the Fair Labor Standards Act and New York Labor Law.  This Court should not countenance such behavior, and should grant this Motion on this basis alone.

### b.  Defendant Jennifer Capala Cannot Meet Her Burden To Demonstrate The Adequacy of Consideration

"Where the evidentiary facts as to the nature and value of the consideration are within the transferee's control, the burden of coming forward with evidence on the fairness of the

---

██████████████████████████  Thus, without the value of the assets comprising his portion of the Transferred Properties, the Judgment would have rendered Pawel Capala insolvent.

[13] Even if the Court were to hold that the burden should not shift *ab initio* due to the nature of the Capala Transfers as an intra-family transaction, the foregoing makes clear that the Plaintiff has made out a prima facie case that it is entitled to summary judgment on its  DCL § 273-A claim.  Thus, the burden now shifts on that basis to Defendants to demonstrate with admissible evidence that a material question of fact exists as to whether the Capala Transfers were made in good faith.  However, like her former husband, the only evidence she can possibly muster is her own self-serving testimony.  Such 'evidence' is insufficient to defeat this Motion. *See infra,* at 12-13.

[14] This analysis taken to its logical conclusion implies that Jennifer Capala is herself a part of and culpable for Pawel Capala's scheme to defraud his creditors.  However, that conclusion is not necessary for finding for the Plaintiff on this Motion, and so Plaintiff does not press it here.

consideration shifts to the transferee." *ACLI Gov't Sec., Inc. v. Rhoades,* 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd sub nom. ACLI Gov. v. Rhoades*, 842 F.2d 1287 (2d Cir. 1988) (*citing Gelbard v. Esses,* 96 A.D.2d 573, 576, 465 N.Y.S.2d 264, 268 (2d Dep't 1983)). Relatedly, "[i]ntrafamily transfers without any signs of tangible consideration a[re] presumptively fraudulent." *See United States v. Mazzeo,* 306 F.Supp.2d 294, 311 (E.D.N.Y. 2004) (internal citations omitted).  Here, because the Capala Transfers were intra-family transfers, and because the alleged consideration was intangible and speculative future payment obligations related to educational expenses,[15] the burden is on Defendant Jennifer Capala to demonstrate the fairness of the consideration allegedly provided.

With regard to that consideration, the 2013 FOF, the Separation Agreements, and even the 2018 Divorce Judgment, are all silent as to what amount of educational expenses have been, will be, or are likely to be, incurred, *i.e.*, the term of the agreement is entirely indefinite. Defendant Jennifer Capala has alleged that she has expended vast sums for her children's education,[16] and Defendant has apparently taken the position that Pawel Capala would have been obligated to pay 71.2% of those educational expenses absent the Separation Agreements.[17]

---

[15] *See* SOMF, ¶ 8; Kessler Decl., ¶ 7, Exh. 7.  On October 23, 2018, the Defendant filed the 2018 Divorce Motion, seeking to 're-open' the 2013 Divorce Action, asserting, nearly five years after the 2013 Divorce Judgment was entered, that its terms were erroneous.  *See* SOMF, ¶ 20; Kessler Decl., ¶ 17, Exh. 14. On November 8, 2018, the 2018 Divorce Judgment was entered.  *See* SOMF, ¶ 21; Kessler Decl., ¶¶ 18, 19; Exh. 15, 16. At no point between the filing of the 2018 Divorce Motion and the entry of the 2018 Divorce Judgment did Defendants' counsel give notice to the Plaintiff that Defendants sought to nullify the 2013 Divorce Judgment.  Kessler Decl., ¶ 20.  Thus, Defendants – in concert, at the 11th hour of this litigation – attempt to retroactively modify the terms of the consideration relevant to the claims in this litigation, in order to better Defendants' position and change the facts in their favor.  This is precisely the sort of surprise tactic that courts do not countenance.  For these and the reasons set forth in Plaintiff's Letter to the Court dated November 27, 2018 (D.E. 65), Defendant Jennifer Capala should not be permitted to refer to or make use of the 2018 Divorce Judgment, or any papers related thereto, in these proceedings.

[16] *See* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 139:21-24).

[17] *See* Kessler Decl., ¶ 24, Exh. 20 (Expert Report of Robert Jones (the "Jones Report"), at 5).

However, that argument is unfounded: support for a child's education is not mandatory. *Lynn v Kroenung*, 97 A.D.3d 822, 823, 949 N.Y.S.2d 144 (2d Dep't 2012); *Cimons v Cimons*, 53 AD3d 125, 131 (2d Dep't 2008) (educational expenses are awarded "as justice requires," in the discretion of the court) (*citing* Family Ct Act § 413(1)(c)(7)).   Relatedly, it is indisputable that Pawel Capala would never have been able to pay for 71% of the educational expenses allegedly incurred by Jennifer Capala.[18]   Thus, Defendants' position—that Jennifer Capala provided approximately $583,000 in consideration by allowing Pawel Capala to "avoid costs" in that amount relating to primary and secondary education[19]—is specious.

Indeed, Defendant Jennifer Capala has acknowledged under oath that the children's educational expenses are essentially paid for with the rental income from one of the Transferred Properties (the Frost Street Property) or gifts from her mother.  *See* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 159:6-11) ("That's what I use the money [from the Fire Hill Holdings bank account] for, for the children's tuition."); *id.* at 37:6-38:3 (brokerage account funded by gifts of stock from mother and grandmother), *id.* at 96:21-25 (children's private school paid for in part from funds derived from brokerage account).  Thus, in reality, Pawel Capala transferred assets worth approximately $1,900,000 – including and especially the Frost Street Property, now worth approximately $3,400,000[20] – and received nothing in return except fabricated 'relief' from an illusory obligation.  Even assuming that Pawel Capala would have been obligated to pay a share of the educational expenses proportionate to his and Jennifer Capala's respective means, the value of the Transferred Properties is such that the consideration allegedly supplied by Defendant Jennifer Capala would be "disproportionately small."  *Lippe v. Bairnco Corp.*, 249 F.

---

[18] *See, e.g.,* Kessler Decl., ¶ 11; Exh. 11 (2012 Capala Joint Tax Returns).

[19] *See* Kessler Decl., ¶ 24, Exh. 20 (Jones Report, at 3).

[20] *See* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 60:5-7)

Supp. 2d 357, 377 (S.D.N.Y. 2003).  In light of the foregoing, it will be impossible for Jennifer Capala to meet her burden at trial of demonstrating the adequacy of consideration, and this Court should grant summary judgment pursuant to DCL § 273-A.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.   Plaintiff is Entitled to Summary Judgment as to Defendant Jennifer Capala's Separate Property Affirmative Defense

"Where a plaintiff uses a summary judgment motion [ ] to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *Nw. Mut. Life Ins. Co. v. Fogel*, 78 F. Supp. 2d 70, 73 (E.D.N.Y. 1999) (internal citations and quotations omitted).

In *Giammettei,* the Second Circuit explained:

> there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.' *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be "no genuine issue as to any material fact" since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial.' *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

*FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (brackets in original).

In her Amended Answer, Jennifer Capala added her Separate Property Defense, which is an affirmative defense that

> 33. The transfers made under and pursuant to the Agreement are, in whole or in part, a recognition of the substantial separate property owned by Jennifer Capala in the assets transferred in accord with the New York Domestic Relations Law.

> 34. The value of Jennifer Capala's separate property in the assets transferred offsets in whole, or in part, any value to which Pawel

18

> Capala, or those with derivative claims (under him and/or in his
> stead, including the plaintiff in this action) may obtain in this
> action in the assets transferred.

SOMF, ¶ 17; Kessler Decl., ¶ 14, Exh. 13 (Amended Answer, at 6).  Specifically, Defendants have asserted that the $80,000 down payment made in connection with the Frost Street Property, as well as $108,000 in renovations to the Frost Street Property, were paid with funds that were Jennifer's separate property prior to and during the marriage. *See* Kessler Decl., ¶ 24, Exh. 20 (Jones Report, at 1).[21]

Property acquired during the marriage – like the Transferred Properties, and funds received by Jennifer Capala from nearly any source – is presumed to be marital property subject to equitable distribution.  *See* Domestic Relations Law § 236(B)(1)(c); *Lischynsky v. Lischynsky*, 120 A.D.2d 824, 826, 501 N.Y.S.2d 938 (3d Dep't 1986).  "The party seeking to overcome this presumption has the burden of proving that the property in dispute is separate property." *Tsigler v. Kasymova*, 73 A.D.3d 1159, 1159–60, 902 N.Y.S.2d 128, 129 (2d Dep't 2010) (internal citations and quotations omitted).  Thus, in order to survive a motion for summary judgment as to the Separate Property Defense, Jennifer Capala must demonstrate by admissible evidence that a rational fact-finder could determine that she purchased the Properties at issue with separate funds and that she expended separate funds on the renovations to the Frost Street Property.

Defendants cannot do so.  All Defendants can proffer in support of the Separate Property Defense is her bare say-so that it was her personal funds that were used for the purchase of the Properties and for the renovation of the Frost Street Property.  But the "court is not bound by a party's own account of his or her finances, and where a party fails to trace the sources of money claimed to be separate property, the court is justified in treating it as marital property." *Saasto v.*

---

[21] The Jones Report's analysis and opinions relate only to the Frost Street Property.  No expert opinions were proffered by Defendant with respect to any other property.

*Saasto,* 211 A.D.2d 708, 709, 621 N.Y.S.2d 660 (2d Dep't 1995).  Here, the Defendant can offer

no documentary evidence to trace the use of separate property to the purchase of the Properties

or to the renovation of the Frost Street Property. *See, e.g.,* Kessler Decl., ¶ 21, Ex. 17 (J. Capala

Dep. at 100:23-101:16) (no records or documentation to demonstrate that down payment was

paid with separate funds allegedly received from family gifts and selling of stock); (J. Capala

Dep. at 57:10-19) (Q: "Do you have any records to demonstrate the source of the funds that were

used for the renovations of the property?" A: "I do not"); (J. Capala Dep. at 119:3-11); *see also*

Kessler Decl., ¶ 26, Exh. 22 (Expert Report of David L. Gresen (hereinafter the "Gresen

Report"), at 6) (opining that "[n]owhere is there any supporting documentation to validate Ms.

Capala's assertion that $80,000 of the initial down payment came from her 'separate funds'");

*id.,* at 7 (opining that "[b]ased on the information provided, there is no way for anyone to

determine if the $108,000 of renovations were in fact paid with Ms. Capala's separate funds").

 These failures of proof are lethal to her affirmative defense.  As the court noted in

*Steinberg v. Steinberg,*

> the defendant's testimony that the source of the assets could be
> traced to premarital property, unsupported by documentary
> evidence, was insufficient to overcome the marital presumption . . .
> The defendant did not trace the source of his portion of the
> building's acquisition costs to separate pre-marital funds and
> likewise did not establish that his actual financial contributions to
> the building's acquisition and management costs were not derived
> from marital funds.

59 A.D.3d 702, 704, 874 N.Y.S.2d 230, 232 (2d Dep't 2009).  That holding applies with equal

force here.

 Furthermore, even assuming that Defendant Jennifer Capala brought into the marriage

separate property that she intended to use for the purchase of real estate, or that she received

separate property during the marriage that she intended to use for the renovation of the Frost

Street Property, she has not offered any support whatsoever to support the proposition that such separate property was not commingled. *See, e.g.,* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 87:15) (testifying that a joint account may have been used in connection with the purchase, renovation, or maintenance of the Frost Street Property); *id.,* at 100:23-101:16 (no ability to trace down payment funds); *id.,* at 57:10-19 (no ability to trace renovation funds). This too dooms the Separate Property Defense. *Judson v. Judson*, 255 A.D.2d 656, 657, 679 N.Y.S.2d 465, 467 (3d Dep't 1998) ("once separate property is commingled with marital funds it becomes marital property"); *see also Steinberg* 59 A.D.3d at 704 (2d Dep't 2009) ("Marital property is to be viewed broadly, while separate property is to be viewed narrowly.").

Finally, any doubt as to whether the Separate Property Defense is fatally deficient can be quickly dispelled by a review of the deposition testimony of the Defendant's own expert. Robert Jones testified that he was "virtually certain that [he] did not or was not" "asked to trace whether something was separate property." Kessler Decl., ¶ 25, Exh. 21 (Deposition of Robert Jones (hereinafter "Jones Dep."), at 34:10-14). Furthermore, Jones answered "No," when asked whether he looked at "any documents to see where the $80,000 [down payment] came from." *Id.,* at 43:14-16. Jones testified that he did not review any of the documents that he would typically review "in order [to] opine that the 80,000-dollar down payment was Jennifer Capala's separate property" because he "was told that it was separate property, and [he] wasn't asked to prove that it was separate property."[22] When asked whether it was "fair to say that in [his] report he simply assumed that the 80,000-dollar down payment was Jennifer Capala's separate property and that [he] did absolutely nothing to confirm that that was true," Jones answered, "[o]ther than

---

[22] Jones testified that he would typically "look for the 80,000 check [and] look at the bank account that the check was drawn from [and] look for [ ] records possibly on deposits into that account, and the source of the funds for those deposits." *Id.,* at 43:22-44:1. Defendants did not produce any of that documentation. *See* Kessler Decl., ¶ 21, Ex. 17 (J. Capala Dep. at 100:23-101:16, 57:10-19, 119:3-11).

inquire with counsel [for Defendant] whether or not it was separate property, [he] did nothing else."  Kessler Decl., ¶ 25, Exh. 21 (Jones Dep. at 48:20-49:2).

Similarly, when asked whether the "[$]108,000 for renovations to the property" – that the Jones Report considered separate property and listed as one of the "Facts" on which it relied – was in reality "another fact that [he was] asked to assume," Jones answered, "Yes."  *Id.,* at 52:7-11.  Furthermore, when asked whether he was provided any documents to support the proposition that the $108,000 came from separate property, Jones answered, "I don't believe so," and that he "assumed that it was separate property without doing any independent analysis" "other than the inquiries that [he] made with [Defendant] and her attorney."  *See id.* at 53:8-19.

Thus, put simply, Robert Jones, the Defendant's own expert, testified that (1) he was not asked to trace any of the allegedly separate funds; (2) he was not provided any documentation whatsoever to support the proposition that any separate funds were used for the down payment for or renovations to the Frost Street Property; but rather (3) he was told to assume that separate funds were used.  In reality, he was not provided any supporting evidence for Defendants' Separate Property Defense because no such evidence exists – or was not produced, which for purposes of this Motion leads to the same result.  That result is that this Motion for Summary Judgment must be granted for Plaintiff as to Defendants' Separate Property Defense.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court enter an Order (i) granting the Plaintiff's Motion in its entirety, and, accordingly, (ii) avoiding the fraudulent transfers of the Transferred Properties; (iii) directing the turnover of all the Debtor's interest in the Properties to the Estate pursuant to 11 U.S.C. § 542; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
        December 7, 2018

                        **AKERMAN LLP**

                        By:    */s/John P. Campo*
                              John P. Campo
                              Scott M. Kessler
                              666 Fifth Avenue, 20th Floor
                              New York, New York 10103
                              Tel. No. (212) 880-3800

                        *Counsel for the Plaintiff John S. Pereira, Chapter 7*
                        *Trustee for the bankruptcy estate of Pawel Capala*