UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN S. PEREIRA, Chapter 7 Trustee for       :
the bankruptcy estate of Pawel Capala,       :
                                             :
          Plaintiff,                         :   Case No. 17-cv-03434 (ILG)(SMG)
                                             :   **(Related proceeding to**
v.                                           :   **Case No. 07-cv-3629 (ILG))**
                                             :
PAWEL CAPALA, JENNIFER CAPALA,               :   **ECF CASE**
and FIRE HILL HOLDINGS, LLC,                 :
                                             :
          Defendants.                        :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANTS' JOINT BRIEF IN SUPPORT OF
# THEIR CROSS MOTION FOR SUMMARY JUDGMENT

MICHAEL D. ASSAF, ESQ.
ASSAF & SIEGAL PLLC
*Attorneys for Defendants, Jennifer*
*Capala and Fire Hill Holdings, LLC*
16 Corporate Woods Boulevard
Albany, New York 12211
(518) 431-1000



GABRIEL DEL VIRGINIA, ESQ.
LAW OFFICES OF GABRIEL DEL VIRGINIA
*Attorneys for Defendant, Pawel Capala*
30 Wall Street, 12th Floor
New York, New York 10005
(212) 371-5478

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................ii

TABLE OF AUTHORITIES ........................................................iii

PRELIMINARY STATEMENT ................................................ 1

LEGAL STANDARD ............................................................. 9

ARGUMENT……………………………………………………10

    A.  Pawel's Entitlement to the Subject Properties and the Value of what was Transferred Must Account for Jennifer's Separate Property .. ................................................. 10

    B.  The Parties' Judgment of Divorce Conclusively Establishes, As a Matter of Law, That There Was Reasonably Equivalent Value for the Transfers ……......... 14

    CONCLUSION ................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)……………………………………………………9

*Belilos v. Rivera,*
    164 A.D.3d 1411 (2nd Dept. 2018)…………………………….…..12

*BFP v. Resolution Trust Corp.,*
    511 U.S. 531 (1994)…………………………………………….…..18

*Cadle Co. v. Newhouse,*
    20 F. App'x 69 (2nd Cir. 2001)…….……………………….…….4, 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)……………………………………….…..9

*Coach, Inc. v. Peters,*
    *386 F. Supp.2d 495 (S.D.N.Y. 2005)……………………..…………10*

*Foppiano v. Foppiano,*
    166 A.D.2d 550 (2nd Dept. 1990)………………….……………12

*Gortat et. al. v. Capala Brothers, et. al.,*
    Case 7-cv-3629 (ILG)(SMG)……………….…..…………..... 1, 16

*Halse v. Halse,*
    93 A.D.3d 1003 (3rd Dept. 2012)……………………………...10

*Heine v. Heine,*
    176 A.D.2d 77 (1st Dept. 1992)……………………………12

*In re Bledsoe,*
    350 B.R. 513 (Bankr. D. Or. 2006)…………………………18

*In re: Zerbo,*
     397 B.R. 642 (E.D.N.Y. 2008)…………………..……9, 15, 18, 21, 22

*Leva v. Leva,*
     155 A.D.3d 707 (2nd Dept. 2017)…………………………….…..10

*Marine Midland Bank v. Murkoff,*
     120 A.D.2d 122 (2nd Dept. 1986)……………………………………..5

*Price v. Price,*
     69 N.Y.2d 8 (1986)…………………………………………..5, 6, 13, 14

*Robertson v. Robertson,*
     186 A.D.2d 124 (2nd Dept. 1992)……...........................................5, 12

*Smith v. Goord,*
     2008 WL 902184 (NDNY 2008)…………………………………..9

*Tsigler v. Kasymova,*
     73 A.D.3d 1159 (2nd Dept. 2010)……………….…………5, 6, 13, 14

## New York State Statutes

Domestic Relations Law§236(B)(1)(d)(1)…………………….….….…………………6

Domestic Relations Law §236………………………………………….…………10, 18

Domestic Relations Law §236(B)(1)(d)……………………………………...11, 13

Domestic Relations Law §240(1-b)…………………………………...…………………19

## PRELIMINARY STATEMENT

Defendants, Jennifer Capala ("Jennifer"), Fire Hill Holdings, LLC and Debtor, Pawel Capala ("Pawel") move this Court for summary judgment, dismissing the Trustee's complaint in this matter in all respects. Defendants have filed a joint statement of material facts contemporaneously herewith and hereby incorporate the same herein as if fully set forth herein as well as the defined terms utilized therein unless otherwise specifically set forth herein. The Affidavits of Jennifer Capala and Pawel Capala accompany this motion, are incorporated herein as well and cites thereto shall be denoted by a "JCA" or "PCA" followed by the relevant paragraph number.

Pawel and co-defendant, Jennifer, were formerly husband and wife. There are two (2) minor children born of this marriage, namely, ███████████ and ██████ ██████, who continue to reside with their mother at the Spencertown Property.

Pawel was a named defendant with his brother Robert Capala in a wage and hour litigation entitled *Gortat, et al v. Capala Brothers, Inc., et al*, which went to jury verdict on May 13, 2013 (P Ex "1"). Judgment was entered against Pawel, his brother Robert and CBI for $293,212.42, jointly and severally (P. Ex "2" the "*Gortat* Judgment") and sometime later in 2017, this Court entered a second judgment against Pawel, Robert and CBI for attorney's fees and costs in the amount of $566,423.50 (P. Ex "9, the "Fee Award").

On June 3, 2013, Pawel and his then wife, Jennifer, who had been estranged since 2007 and who had been considering a divorce since 2010 (JCA ¶12,47,48, PCA ¶9 executed their Agreement resolving the economic and support issues in their matrimonial action.  Pawel and Jennifer and were divorced pursuant to the Initial Judgment on December 18, 2013 (D Ex "B").

At the time of the Agreement, Pawel had been making approximately $80,000.00 per year from his work at CBI (PCA, ¶ 19) and his work there and wage income continued until June 2014, when the operations of CBI ceased as its accounts were seized by the *Gortat* plaintiffs in an effort to realize upon the awards made to them by the Court.

Pawel filed for protection from their creditors under Chapter 7 of the United States Bankruptcy Code in June, 2015 (D Ex "C").

With respect to the matrimonial action between Jennifer and Pawel, the Initial Judgment was re-settled on November 5, 2018 and the Corrected Judgment was issued *nunc pro tunc* to December 18, 2013 (the "Corrected Judgment", P Ex "16"). The purpose of the Corrected Judgment by its own terms is to amend and restate the Initial Judgment to, *inter alia*, properly incorporate the Agreement between Pawel and Jennifer into their judgment of divorce because the Initial Judgment incorrectly stated both the date of the Agreement as well as the child support provisions which were contained in the Agreement. *See, Motion to Re-Settle,* (P Ex *"14").*

2

Throughout the process of creating, making and executing the Agreement, neither party was represented by counsel (JCA 51).  Neither party appeared before the Columbia County Supreme Court with retained counsel in the process of acquiring the Initial Judgment, but appeared *pro se*, which likely accounts for the errors in the Initial Judgment and accompanying Findings of Fact.  Both parties appeared through counsel before the Columbia County Supreme Court in connection with the re-settlement motion practice resulting in the Corrected Judgment.

As part of the terms of the Agreement, now properly incorporated into the Corrected Judgment, Pawel transferred to Jennifer whatever rights he possessed in June, 2013 in and to the Brooklyn Property, the Hillsdale Property and the Spencertown Property in return for, *inter alia,* (i) a waiver of his support obligations to Jennifer and the Children; (ii) a waiver of any obligation he might have had to participate in the cost of their education; and (iii) the retention by him of CBI.

The adversary proceeding to which this motion relates was commenced by the Trustee on June 8, 2017 (P Ex "12", D Ex "D") in an effort to use the Trustee's strong arm powers to claw back into the Debtor's estate the Debtor's interest in the Subject Properties he transferred in accord with the Agreement.

The market value of the Brooklyn Property as of June 3, 2013, which was jointly titled at the time of the Agreement prior to transfer, was $1,900,000.00 according to appraisal obtained by Jennifer (D Ex "G").  The parties themselves

valued the Brooklyn Property at $1,500,000.00 in the Agreement (P Ex "4") and in Pawel's schedules in his bankruptcy petition (D Ex "C").

Jennifer has substantial separate property claims in the Brooklyn Property, more particularly discussed at length in her Affidavit, and Pawel acknowledges not only that these claims exist in the amount Jennifer claims that they do, but states in his Affidavit that but for the presence of Jennifer's pre-marital monies and periodic gifts that she received from her mother and extended family, that the acquisition and renovation of the Brooklyn Property and the acquisition of the Hillsdale Property would not have been possible.

The Brooklyn Property was encumbered by debt in the aggregate amount of $324,782 at the date of transfer under the Agreement (JCA 37).

In the event that the Trustee were successful with his claims in this action, he would be left to determine the value of Pawel's equitable distribution claims in the Subject Properties as of the date of the transfer, as the parties have now been divorced since 2013. As this Court noted in its findings and recommendation in connection with the CBI Withers Street transfer, defrauded creditors cannot enhance their position through the finding of a fraudulent transfer and that the creditor's remedy is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance (P. Ex. "10", p. 20, citing, *Cadle*

*Co. v. Newhouse*, 20 F. App'x 69, 73 (2nd Cir. 2001), *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133 (2nd Dept. 1986).

The acknowledgment by both Jennifer and Pawel of the presence of separate property is truly the end of the inquiry in any equitable distribution analysis.  Indeed, it will be error for the Court handling equitable distribution to fail to give a separate property credit where the testimony of the divorcing parties is undisputed regarding the presence of separate property *Robertson v. Robertson*, 186 A.D.2d 124 (2nd Dept. 1992).

Further, and as a matter of equitable distribution law, once separate property has been established, the owner of the separate property is entitled to recover also any component of the appreciation attributable to the separate property investment *Price v. Price*, 69 N.Y.2d 8 (1986); *Tsigler v. Kasymova*, 73 A.D.3d 1159 (2nd Dept 2010).

Jennifer's expert, Dr, Robert Jones of Valuation Resources Group, LLC, valued Jennifer's separate property and the appreciation attributable thereto in his Report (P Ex "20", p. 4, D Ex "J", p.4).  After so doing, Dr Jones determined the value of Pawel's marital interest in the Brooklyn Property to be $565,000.00 in gross, without the consideration of the value of encumbrances on the Brooklyn Property.  In her Affidavit, Jennifer shows that after reducing Pawel's marital share found by Dr. Jones by one-half of the outstanding debt in 2013 ($162,391) yields a

net equitable distribution entitlement to Pawel of $402,609 in the Brooklyn Property, which was transferred to her by the Agreement (JCA 37).

The Hillsdale Property was entirely acquired with the proceeds of a family trust which distributed monies to Jennifer at the time of the acquisition of the Hillsdale Property and Pawel contributed nothing to the acquisition of this property (JCA 25, 26; PCA 28.)   At its acquisition, the Hillsdale Property was vacant land, remains vacant land as of this writing and has appreciated only passively over the years since its acquisition, as a result.  Therefore, at the time of the Agreement, the Hillsdale Property was Jennifer's separate property and Pawel had no equitable distribution entitlement thereto.  DRL§236(B)(1)(d)(1), *Price v. Price*, 69 N.Y.2d 8 (1986); *Tsigler v. Kasymova*, 73 A.D. 3d 1159 (2nd Dept 2010).

The Spencertown Property was jointly acquired by the parties. It was not transferred by deed prior to the bankruptcy filing, but an obligation to transfer it is contained in the Agreement, so it will be considered in the analysis herein.

At the time of the Agreement the Spencertown Property was worth $280,000.00 (D Ex "A") and encumbered by a mortgage and home equity loan having an aggregate balance then due of $191,426.00, yielding net equity of $88,574.00 (JCA 40), of which net equity Pawel was entitled to one-half in equitable distribution.  Therefore, Pawel's equitable distribution entitlement in this property at the time of the Agreement was $44,287.00.

Following consideration and calculation of the value of the separate property interests of Jennifer, the value of her undivided one-half interests in the Subject Properties and the value and division of the debt encumbering the Subject Properties at the time of transfer, the total value transferred by Pawel with respect to the value of his equitable distribution entitlement to the Subject Properties was $446,896.00. That is the value of the "quid", if you will, given by Pawel in the Agreement.

The value of the "quo", which Pawel received under the Agreement, includes the value of the child support waiver. Dr. Jones' report includes two scenarios to value for the base child support obligation due from Pawel; namely (i) the value set forth in the Agreement; and (ii) the value that would be generated from application of the statutory formula to Pawel's 2012 tax return income. The values are discounted and present valued in the report to account for the fact that the nominal monthly amount of base support is paid over a term of years and, so, the time value of money must be accounted for in the present value calculation. Moreover, following the Corrected Judgment, scenario (ii) is now what is represented as the support that would have been paid by Pawel absent the "opt out" set forth in the Agreement, and it is the lower of the two (2) scenarios to value for the base support obli8gation. Dr. Jones valued the base support obligation to be $202,500.00 (D Ex. J, p.5).

Also included in the value of the "quo" under consideration here is Pawel's Agreement-based waiver of his obligation to contribute to the educational expenses of the children, and Dr. Jones calculated the maximum present value of that potential obligation at $583,000.00 *Id.* Obviously, the combination of these two items is greater than the aggregate value calculated for Pawel's equitable distribution interest in the Subject Properties.

Importantly, the value of the "quo" discussed here does not include (i) health insurance expenses and uninsured medical expenses for the children (a mandatory statutory "add-on" to base support under DRL §240(1-b), for which Pawel would otherwise have been responsible for 71% of such expenses in accord with Dr. Jones' calculations); (ii) the value of the waiver of maintenance by Jennifer; (iii) the value of the then going concern CBI and Jennifer's marital share thereof, which Pawel retained in 2013; as well as all other benefits Pawel received by the presence of the Agreement. By any measure, the value of the "quo" given by Jennifer in the Agreement exceeds the value of the "quid" given by Pawel and, at a minimum, there appears to be reasonably equivalent value given by Jennifer for the transfers if not more than economic equivalence.

## LEGAL STANDARD

It is well settled that the Court should grant summary judgment if the Court determines that "*the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law*" *In re: Zerbo,* 397 B.R. 642 (E.D.N.Y. 2008), *citing*, *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986) (other internal citations intentionally omitted).

Jennifer has the initial burden of establishing the absence of genuine issues of material fact *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "*might affect the outcome of the suit under governing law*" Anderson, 477 U.S. at 248.  An issue of fact is genuine "*if the evidence is such that a reasonable jury could return a verdict for the non-moving party*" *Id.*

If Jennifer cannot demonstrate that there is no genuine dispute with respect to any essential element of the claim in issue, the failure to meet this burden should warrant the denial of the motion. *Zerbo, supra, citing, Smith v. Goord* 2008 WL 902184 NDNY 2008.  Should Jennifer meet this burden, it is then incumbent upon the Trustee to produce "significant probative evidence" that a genuine issue of fact exists *Id., citing, Anderson*, 477 U.S. at 249.

As part of the evaluation of the motion for summary judgment, the Court must draw all reasonable inferences against the party whose motion is under consideration. *Id., citing, Coach, Inc. v. Peters*, 386 F. Supp 2d 495, 497 (S.D.N.Y. 2005) (other internal citations omitted).

In this motion, Defendants seek to prove that the transfers of the Subject Property were in all respects appropriate and that the Debtor, Pawel, received "reasonably equivalent value" therefor.  Defendants contest the Trustee's position regarding alleged lack of or "inadequacy of consideration" for the transfers under the Agreement, which is a material element of his claims under the sections of the DCL pursuant to which he seeks to claw back Pawel's interest in the Subject Properties into Pawel's bankruptcy estate.

## ARGUMENT

### A.  *Pawel's Entitlement to the Subject Properties and the Value of what was Transferred Must Account for Jennifer's Separate Property*

In an effort to evaluate the relative positions here, it is important to understand that in equitable distribution in New York State, title is not controlling with respect to the ultimate distribution of any asset but that the facts and circumstances of the acquisition and maintenance of the asset, and particularly, the investment of separate property in an asset may govern a differential entitlement between parties in an asset

10

otherwise jointly held.  DRL§236, *Leva v. Leva* 155 A.D.3d 707 (2nd Dept. 2017), *Halse v. Halse*, 93 A.D.3d 1003 (3rd Dept 2012).

DRL §236 B(1)(d) defines separate property, and includes in its definition property held separately before the marriage and property received by bequest, inheritance or gift during the marriage by anyone other than a spouse.  The Brooklyn Property was acquired in 1996, two (2) years after the marriage of the parties.  Both parties testified in their Affidavits that Pawel had no income or savings at the time of the acquisition of this property as he terminated his prior employment with Columbia University and was attempting to begin his own company with his brother.  Both parties testified that Jennifer had approximately $350,000.00 in savings and investments that she acquired from her family through gifts and that she used this money to make the down payment of $80,000.00 and to pay for the cost of renovations of $108,000.00.

Defendants concede that detailed and/or complete records of what occurred over twenty (20) years ago in some respects are difficult to locate and that the paper trail in this regard is incomplete.  However, what we do clearly have is the testimony by both parties that Pawel was either unemployed or newly working at his own company at the time of the acquisition and renovation of the Brooklyn Property in 1996 and had no monies to contribute either to the expenses of daily living in their home or certainly to any investment such as the Brooklyn Property and that

Jennifer's income from her periodic photography work was just enough to meet their daily joint expenses and that there was no alternative source for the monies to acquire, pay for and renovate the Brooklyn Property other than her pre-marital funds.

Parties in New York have been able to prevail on claims of separate property where the paper trail is incomplete due to loss of records over time and the presentation of "no alternative source" testimony *Heine v. Heine,* 176 A.D.2d 77 (First Dept. 1992), *Foppiano v. Foppiano*, 166 A.D.2d 550 (Second Dept 1990). Here we have both parties in agreement on the facts—Pawel had no job from which he received regular income at the time of acquisition of the Brooklyn Property, and no savings or money to contribute to the acquisition cost or cost of renovation (PCA 12,13, JCA 31,32. The *Robertson* case, *supra,* stands for the proposition that in this factual instance, the separate property credit will be given.

Pawel always acknowledged the Brooklyn Property and the Hillsdale Property as Jennifer's property, because without her family money, acquisition of each would not have been possible (PCA 11).  Since there is an acknowledgment and agreement between the divorcing parties regarding the nature and character of separate property, the presumption of marital property created by the joint titling of property, and/or the acquisition of same during the marriage may be overcome and a claim of separate property will prevail *See, Belilos v. Rivera*, 164 A.D. 3d 1411 (Second Dept. 2018), *Robertson v. Robertson, supra*.

For valuation and evaluation purposes of the quid and the quo here, Jennifer would otherwise be entitled to her separate property investment in the Brooklyn Property plus the appreciation attributable to that investment over the period of ownership of the asset. *Price v. Price*, 69 N.Y.2d 8 (1986); *Tsigler v. Kasymova*, 73 A.D. 3d 1159 (2nd Dept 2010).

Now there is no question or dispute that the Brooklyn Property has appreciated during the marriage due to the active efforts made by Jennifer to improve it, that the parties owned it jointly for the better part of seventeen (17) years and that marital funds were used to pay down the purchase money mortgage and other expenses of the property over the period of ownership, as Pawel began to contribute to the marital fisc, which is why Pawel is entitled to a share of that investment, in the manner and method described by Dr. Jones in his report (P Ex "20", D. Ex "J").  That is why, unlike the Hillsdale Property, Pawel has value attached to his marital share of the Brooklyn Property in equitable distribution.

As for the Hillsdale Property, both parties acknowledge that it was and remains vacant land and was entirely acquired from a distribution from Jennifer's grandmother's trust on or about Jennifer's 40th birthday (JCA 26,27; PCA 28).  DRL §236 B(1)(d) describes separate property as including property that was exchanged for separate property (the distribution from the trust was exchanged for the Hilldale Property).

13

Since the Hillsdale Property is vacant land and no efforts have been made to improve it, there are no expenses incurred in connection with it other than de-minimis real estate taxes over the period of ownership, and the only appreciation attributable to this asset would have been that arising from passive market forces affecting the value of vacant land over the period of ownership, it was, is, and remains entirely Jennifer's separate property. *Price v. Price*, 69 N.Y.2d 8 (1986); *Tsigler v. Kasymova*, 73 A.D. 3d 1159 (2nd Dept 2010) with no value attributable to Pawel in equitable distribution as a result, other than a potential recoupment claim by Pawel of one-half of the real estate taxes paid with marital funds over the period of ownership, to the extent those taxes were paid with marital funds and not with gifts that Jennifer received from her family.

As for the Spencertown Property, it has not yet been transferred, but certainly, Pawel is obligated so to do and in any assessment of reasonably equivalent value for the transfers made in the Agreement, Pawel's undivided interest in one-half of the equity interest prevailing at the time of Agreement should be considered, as it was above.

## B. The Parties' Judgment of Divorce Conclusively Establishes, As a Matter of Law, That There Was Reasonably Equivalent Value for the Transfers

Once separate property claims are considered, then it becomes possible to accurately value Pawel's interests transferred under the Agreement in return for the

benefits Pawel received by entering into the Agreement, were this Court inclined to engage in an economic equivalency examination of the transaction, as was done above.  However, it is well settled in this Court that absent proof of extrinsic fraud or collusion, a divorce decree that incorporates a settlement between the parties ***conclusively*** establishes reasonably equivalent value for purposes of determining whether a transfer is actually or constructively fraudulent under the DCL. Indeed, a division of marital assets which is agreed to by the parties and is contemporaneously or subsequently approved by a matrimonial court and incorporated into a divorce decree ***conclusively*** establishes reasonably equivalent value (emphasis supplied).  *In re: Zerbo*, 397 B.R. 642 (Bankr. E.D.N.Y. 2008).

The question then becomes whether there was extrinsic fraud or collusion between Jennifer and Pawel in the creation of the Agreement.  Both parties testified that Jennifer insisted upon the divorce after discovering Pawel's affair in 2012 (JCA 48, PCA 9) and that Pawel was resistant to the divorce (JCA 48, PCA 6).  Both parties testified to the manner and method of the creation of the Agreement by Jennifer using the facilities of "Legal Zoom", neither party had counsel, Jennifer delivered the Agreement to Pawel to sign after she had completed it, there was no negotiation, and Pawel was not even initially aware that he had even transferred his interest in the Spencertown Property to Jennifer under the Agreement and maintained his belief in ownership through his bankruptcy filing (JCA 49, 50; PCA

7, 32; P Ex "4"), but has since become aware of his obligation to transfer it. These facts militate against a coordinated conspiracy between the parties to transfer property to defraud creditors. Moreover, there was significant value exchanged by both parties in the Agreement, which also militates against a coordinated effort to defraud anyone.

Moreover, Pawel was allowed to retain his business (it was not addressed in the Agreement, thereby reverting to him (as property otherwise unaddressed by equitable distribution remains as titled or possessed (P Ex. "4", p.1 (F)), he continued to work in the business for almost an entire year following the Agreement and, at that time, believed that he and the business could survive the *Gortat* Judgment.  He was making money at a rate that would have garnered him approximately $80,000.00 per annum in recurring income, the business had enough money to pay its own lawyers  over this period, they had a robust and meaningful roster of clients and the business had a going concern value that was apparent to anyone, including counsel for the *Gortat* plaintiffs, who has maintained since the outset that CBI has simply changed its name to Trigon Builders and continued its business.  In short, Pawel may have been far from insolvent at the time of the Agreement, notwithstanding the transfers under the Agreement.

Moreover, the Agreement had a salutary effect on Pawel's after tax income, in that it freed that income up through the support waivers contained therein so that it was then available to general, non-priority unsecured creditors of his.

Inadequacy of consideration does not exist either as Dr. Jones' report and the analysis performed above shows clearly that Pawel's exposure to child support and educational expenses of the children standing alone was well in excess of the value of his equitable distribution entitlement to the Brooklyn and Hillsdale properties, to say nothing of the value of the other benefits Pawel received under the Agreement. It is clear that Pawel received at least reasonably equivalent value for the transfers under the Agreement, if not significantly more, which also militates against a coordinated plan to transfer assets to defraud creditors.

Another badge of fraud claimed to exist by the Trustee is Pawel's continuation of a periodic residence in Spencertown.  Pawel resided in Austerlitz for two (2) years following the Agreement (PCA 40; JCA 68) and only visited with his children in Spencertown and occasionally enjoyed dinner there and the ability to do laundry, but was often in New York City or living with his girlfriend, Danusia, in Hudson, all during a time that he believed that he still owned this property (as he testified that he was unaware that he agreed to transfer it under the Agreement) (PCA. 32, 40). While he did receive his mail at the Spencertown address, he testified that this was so only due to the "itinerant nature" of his housing (PCA 41) and he actually left

New York to live in Poland full time in September, 2018 (PCA 41) returning only at Jennifer's request when their eldest son, ████, got into trouble at school (JCA 70). It is clear that Pawel's presence in Spencertown was not a right of possession and/or control of that property, but was solely at the invitation of Jennifer made in what she believed to be the best interests of her children. Pawel had no use and or retention of the property or income from Brooklyn or Hillsdale since the date of the Agreement and the Trustee has offered no proof to the contrary.

In arriving at the principle for which the *Zerbo* case stands, the *Zerbo* Court analyzed the decisions in, inter alia, *In re Bledsoe*, 350 B.R.513 (Bankr. D. Or. 2006) and *BFP v. Resolution Trust Corp*., 511 U.S. 531 (1994) to come to the conclusion that the outcome of a state court divorce action, which was the result of a regularly conducted proceeding under state law, whether by trial or settlement agreement, ***conclusively*** establishes reasonably equivalent value and should not be disturbed absent proof of collusion or extrinsic fraud between the divorcing parties.

There is no irregularity in any of the State Court proceedings that produced the Corrected Judgment. The motion to re-settle the Initial Judgment was evaluated by the assigned New York State Supreme Court Justice and, in response, the Corrected Judgment issued *nunc pro tunc.* The Agreement of the parties is the only one that was signed, acknowledged and filed as required by DRL §236, it represents the deal to which both parties agreed in 2013 and it is incorporated into the Corrected

Judgment.  The re-settlement did nothing to alter the substance of the business deal the parties made in the Agreement in 2013.

Further, in an effort to determine economic equivalency between what Pawel gave up in the transfers and what he allegedly received by way of the Agreement and the thought process of the parties when they entered into the Agreement, an examination of how the child support was treated by them is instructive.  Pawel simply didn't transfer the Subject Properties for nothing—he received, in part, a waiver of obligations that was extremely valuable.

DRL §240(1-b), known as the Child Support Standards Act ("CSSA") sets forth a formula to determine Pawel's support obligation based on Pawel's last filed tax return prior to June 3, 2013, the date of the Agreement, which would have been the 2012 joint return filed by Pawel and Jennifer (D Ex "M").   Moreover, the Agreement provides the parties' *pro se* calculation of the allegedly presumptively correct amount of support that Pawel would have paid but for the "opt out" of the CSSA provided in the Agreement, which is much higher than what might have prevailed in a litigated setting.

Importantly though, in making the transfers that he did, Pawel could not help but do the math at the number provided in the Agreement over the term and believe that the deal he was making was fair and reasonable.  At a minimum, this creation of pro se divorcing parties reflects their thinking and understanding at the time of

the making of the Agreement as to the value of a portion of the "quid" that was being exchanged for the "quo".

Nevertheless, it appears from the resettlement motion and the recitation by them of events leading up to the Initial Judgment that the parties did not really understand how to draft the mandatory CSSA disclosures required to be contained in the Agreement and that the support number used as the "presumptively correct amount" in the Agreement CSSA disclosure was, in fact, Pawel's then prevailing entire monthly income.

The CSSA provides that the presumptively correct amount of that payment is 25% of Pawel's annual income less a FICA allowance based on the income last reported to the IRS in the return filed immediately prior to the period in time where support is to be determined.  It is this second scenario that was accepted by the Supreme Court to correct the error in the initial submissions of the parties to the Supreme Court and which is now memorialized in the Corrected Judgment.

Dr. Jones' report (P Ex."20", D. Ex "J") provides values for the consideration received by Pawel in connection with the exchange of the Subject Properties for waivers of support, and educational expenses under both base support scenarios, the one recited in the Agreement and the one now contained in the Corrected Judgment issued well after the date of his report in response to the resettlement motion.

Dr. Jones determined values for Jennifer's separate property in the Brooklyn Property (the Hillsdale Property was not necessary as it is entirely separate) determined the initial value of marital property therein, determined the appreciation component attributable to each over the years of joint ownership and then determined Pawel's equitable distribution entitlement thereto. Once that was done, it is a relatively simple matter to compare the value of the Subject Properties quid to the quo given by Jennifer in the Agreement to determine that economic equivalency exists.

However, as *Zerbo* teaches us, in evaluating the relative benefits of the bargain of the parties to a separation and settlement agreement in the context of a divorce, the analysis should not be directed at finding dollar for dollar equivalence. As the Court noted, in relevant part, *"{d}ivorcing parties divide assets for many reasons other than achieving economic equivalency. Among these are the need to adjust assets based upon ongoing custody and support of children…ending the incurrence of the economic costs of the divorce proceeding itself, and, often, the necessity of bringing closure to what can be a difficult, expensive, emotional and energy consuming process"* Zerbo, supra, at 654.

In *Zerbo*, when the Court was evaluating the Trustee's position (which is virtually identical to that articulated in the case at bar), the Court noted that the Trustee "*cannot assert that the Defendant can only claim the consideration stated in*

*the Settlement Agreement as what she surrendered in order to receive the transfer, when the Trustee is also seeking to unwind that very agreement. If this Court considered the Trustee's claims at trial, the Court would compare all of the consideration given up by the Defendant in order to receive the transfer, not just those set out in the precise terms of the settlement agreement" Zerbo, supra at 655.*

The burden would be on the Trustee to prove the existence of inadequate consideration and the alleged failure by Pawel to have received reasonably equivalent value for the transfers under the Agreement. Both Jennifer and Pawel have testified by Affidavit submitted herewith that CBI, Pawel's then ongoing business, was not among the assets divided, Jennifer was to be responsible for 100% of the Children's health insurance uninsured medical expenses, extra-curricular activities, significant secondary school tuition and college, not to mention (i) the value of the tax benefits to Pawel of the waiver of child support calculated under the CSSA on a pre-tax income basis, but paid out of after tax resources; (ii) the freeing up of a substantial portion of his after tax discretionary income he was making at the time of the Agreement due to the support waiver and his ability to apply that to his other needs and obligations, as support is generally a priority debt; and (iii) the non-economic factors mentioned by the *Zerbo* Court and addressed above.

Assuming that the Court is in agreement with the propositions of the regularity of the underlying divorce proceeding; and (ii) the lack of any evidence of extrinsic

fraud or collusion between Pawel and Jennifer in the creation of the Agreement for the reasons set forth herein and in the pleadings, the Defendants respectfully urge this Court to (i) grant to the Defendants summary judgment, dismissing the Plaintiff's Complaint and finding that the transfers pursuant to the Agreement under attack by the Trustee are not fraudulent and that Pawel received reasonably equivalent value therefor; and (ii) to deny in all respects, the Trustee's motion for summary judgment filed herein seeking the opposite relief. (Doc. 68-72).

WHEREFORE, for all of the reasons set forth herein and in the pleadings accompanying this Memorandum of Law, the Defendants respectfully urge this Court to grant the Defendant's Motion for Summary Judgment in all respects and deny the Trustee's motion for summary judgment in all respects; together with all such other and further relief as to this Court may seem just and proper.

Dated:       January 4, 2019
             Albany, New York

                              ASSAF & SIEGAL PLLC


                              By:  s/*Michael D. Assaf*
                                   Michael D. Assaf, Esq.
                              16 Corporate Woods Blvd.
                              Albany, New York 12211
                              Tel. No. (518) 431-1000
                              E-mail: massaf@assafandsiegal.com

                              *Attorneys for Defendants, Jennifer Capala*
                              *and Fire Hill Holdings, LLC*

LAW OFFICES OF
GABRIEL DEL VIRGINIA


By:   s/*Gabriel Del Virginia*
      Gabriel Del Virginia, Esq.
30 Wall Street,12th Floor
New York, New York 10005
Tel. No. (212) 371-5478
E-mail: Gabriel.delvirginia@verizon.net

*Attorneys for Defendant, Pawel Capala*