UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN S. PEREIRA, Chapter 7 Trustee for the   :
bankruptcy estate of Pawel Capala,   :
  :
      Plaintiff,   :  Case No. 17-cv-03434-SMG
  :  **(Related proceeding to**
v.   :  **Case No. 07-cv-3629 (ILG))**
  :
PAWEL CAPALA, JENNIFER CAPALA, and   :  **ECF CASE**
FIRE HILL HOLDINGS, LLC,   :
  :
      Defendants.   :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

John P. Campo
Scott M. Kessler
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Tel. No. (212) 880-3800

*Counsel for the Plaintiff John S. Pereira, Chapter 7
Trustee for the bankruptcy estate of Pawel Capala*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 4

I. Plaintiff Is Entitled to Summary Judgment On His Fraudulent Conveyance Claims and Defendants' Cross-Motion Should be Denied Because the Evidence of Fraud Submitted on the Motion is Not Overcome by the Divorce Judgment .............................. 4

    a. *In re Zerbo* is Wholly Inapposite and Irrelevant to Resolution of the Motions ........... 5

    b. Extrinsic Evidence of Fraud and Collusion Exist ...................................................... 7

II. Plaintiff is Entitled to Summary Judgment Dismissing Defendant Jennifer Capala's Separate Property Affirmative Defense ............................................................ 12

    a. The Frost Street Property was Marital Property and Jennifer Capala Fails to Submit any Competent Evidence to be Entitled to a Separate Property Credit ......... 13

    b. None of Defendants' Cases Supports Denial of Plaintiff's Motion or the Granting of Defendants' Cross-Motion .................................................................... 16

CONCLUSION ........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvares-Correa v. Alvares-Correa,*
    285 A.D.2d 123, 726 N.Y.S.2d 668 (1st 2001) ....................................................11

*Belilos v. Rivera,*
    164 A.D.3d 1411, 84 N.Y.S.3d 536 (2d Dep't 2018) ..........................................17

*Chapman v. Chapman,*
    28 A.D.2d 1028, 283 N.Y.S.2d 782 (3d Dep't 1967) ..........................................11

*Dabo v. Sibblies,*
    142 A.D.3d 459, 36 N.Y.S.3d 648 (1st Dep't 2016) ...........................................13

*Davies v. New York City Dep't of Educ.,*
    2013 WL 1245444 (S.D.N.Y. Mar. 27, 2013), *aff'd*, 563 F. App'x 818 (2d Cir.
    2014) ......................................................................................................................5

*Diaco v. Diaco,*
    278 A.D.2d 358, 717 N.Y.S.2d 635 (2d Dep't 2000) ..........................................13

*Foppiano v. Foppiano,*
    166 A.D.2d 550, 560 N.Y.S.2d 831 (2d Dep't 1990) ..........................................17

*Ford v. Poston,*
    773 F.2d 52 (4th Cir. 1985) ...................................................................................8

*Franklin v. Liberty Lines Transit, Inc.,*
    2016 WL 1078283 (S.D.N.Y. Mar. 17, 2016) ......................................................5

*Gafycz v. Gafycz,*
    148 A.D.3d 679, 48 N.Y.S.3d 464 (2d Dep't 2017) ............................................14

*Golden v. Golden,*
    98 A.D.3d 647, 949 N.Y.S.2d 753 (2d Dep't 2012) ............................................14

*Gortat et al. v Capala Brothers, et. al.,*
    Case No. 7-cv-3629 (ILG) (SMG) ............................................................. passim

*Halse v. Halse,*
    93 A.D.3d 1003, 940 N.Y.S.2d 353 (3d Dep't 2012) ..........................................17

*Hartog v. Hartog,*
    85 N.Y.2d 36, 623 N.Y.S.2d 537 (1995) .............................................................16

*Heine v. Heine*,
176 A.D.2d 77, 580 N.Y.S.2d 231 (1st Dep't 1992) .............................................................17

*In re Beckman*,
104 B.R. 866 (Bankr. S.D. Ohio 1989)...................................................................................9

*In re Checkmate Stereo & Elecs., Ltd.*,
9 B.R. 585 (Bankr. E.D.N.Y. 1981) .......................................................................................8

*In re Elholm*,
80 B.R. 964 (Bankr. D. Minn. 1987) ......................................................................................8

*In re Zerbo*,
397 B.R. 642 (Bankr. E.D.N.Y. 2008)............................................................................. passim

*Leva v. Leva*,
155 A.D.3d 707, 65 N.Y.S.3d 549 (2d Dep't 2017) ............................................................17

*Maddaloni v. Maddaloni*,
142 A.D.3d 646, 36 N.Y.S.3d 695 (2d Dep't 2016) ............................................................14

*Norwest Bank Nebraska, N.A. v. Tveten*,
848 F.2d 871 (8th Cir. 1988) .................................................................................................8

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2d Cir. 1993).....................................................................................................8

*Price v. Price*,
69 N.Y.2d 8, 511 N.Y.S.2d 219 (1986) ..............................................................................16

*Robertson v. Robertson*,
186 A.D.2d 124, 588 N.Y.S.2d 43 (2d Dep't 1992) ............................................................16

*Rosenberg v. Rosenberg*,
145 A.D.3d 1052, 44 N.Y.S.3d 489 (2d Dep't 2016) ..........................................................15

*Scher v. Scher*,
91 A.D.3d 842, 938 N.Y.S.2d 317 (2d Dep't 2012) ............................................................13

*Spera v. Spera*,
71 A.D.3d 661, 898 N.Y.S.2d 548 (2d Dep't 2010) ............................................................13

*Steinberg v. Steinberg*,
59 A.D.3d 702, 874 N.Y.S.2d 230 (2d Dep't 2009) ............................................................15

*Tsigler v. Kasymova*,
73 A.D.3d 1159, 902 N.Y.S.2d 128 (2d Dep't 2010) ..........................................................16

*United States v. Barrier Indus., Inc.*,
 991 F.Supp. 678 (S.D.N.Y. 1998) ...................................................................7

*United States v. Mongelli*,
 857 F.Supp. 18 (S.D.N.Y. 1994)......................................................................8

**Statutes**

Bankruptcy Code § 548 ...........................................................................................6

DCL § 273-A ............................................................................................... passim

DCL § 275...............................................................................................................6

DCL § 276................................................................................................... passim

DCL § 278...............................................................................................................6

DCL § 279...............................................................................................................6

New York's Domestic Relations Law ......................................................................3

**Other Authorities**

Black's Law Dictionary, *Extrinsic Fraud* (10th ed. 2014) ............................................9

## PRELIMINARY STATEMENT

Plaintiff John Pereira, the Chapter 7 Trustee for the Estate of Pawel Capala (the "Plaintiff," or the "Trustee"), submits this reply memorandum of law in further support of his motion for summary judgment (i) to avoid certain fraudulent transfers and (ii) dismiss Defendants' affirmative defense that one of the fraudulently transferred properties was purchased and renovated with separate, rather than marital, funds.  This memorandum of law is also submitted in opposition to Defendants' cross-motion for summary judgment seeking dismissal of the Trustee's complaint.

Rarely would this Court find a more textbook example of a fraudulent conveyance under New York's Debtor and Creditor Law (the "DCL") §§ 276 and 273-A.  As detailed in the Trustee's Memorandum of Law in Support of His Motion for Summary Judgment ("Pl. Mem."), the Debtor/Defendant Pawel Capala (the "Debtor") faced the dire financial consequences of an impending judgment against himself personally, his brother Robert, and their company, Capala Brothers, Inc., in the related *Gortat* Litigation.[1]  The Debtor proceeded to scheme with his brother Robert and his spouse, Defendant Jennifer Capala, to secrete assets from the reach of his soon-to-be judgment creditors.

In February 2013, two weeks after the trial date had been scheduled, the Debtor and Robert Capala fraudulently conveyed the real property owned by the Capala Brothers, Inc. in Brooklyn (the "Withers Street Property").  Declaration of Scott Kessler, dated December 7, 2018 (hereinafter the "Kessler Decl."), Exh. 10, pp. 9, 16, 18, 19.  On June 3, 2013, shortly after the adverse verdict in the *Gortat* Litigation and right before the entry of the judgment, the Debtor and Jennifer Capala executed a document entitled "Separation and Property Settlement

---

[1] *Gortat et al. v Capala Brothers, et. al.,* Case No. 7-cv-3629 (ILG) (SMG) (the "*Gortat* Litigation").

Agreement" (the "Separation Agreement"), in which the Debtor purported to transfer to his wife the entirely of his interest in three properties that had been acquired during their marriage and that he and Jennifer owned together: 246 Frost Street, Brooklyn (the "Frost Street Property"); 152 Fire Hill Road, Spencertown, New York (the "Spencertown Property"); and Stagecoach Road, Hillsdale, New York (the "Hillsdale Property," and together with the Frost Street Property and the Spencertown Property, the "Properties").  Kessler Decl., Exh. 4.

To further deceive the Debtor's creditors, Jennifer Capala immediately transferred the Frost Street Property, which was a revenue-generating rental property and former marital residence, and the Hillsdale Property, which was a vacant lot, to her wholly owned entity, Fire Hill Holdings, LLC ("Fire Hill Holdings"), which she incorporated a week prior while still married.  Kessler Decl., Exhs. 1, 2, 3, 6.  As for the Spencertown Property, both the Debtor and Jennifer Capala and their children live there to this day.  Kessler Decl., Exh. 17 (J. Capala Dep., at 139:5-11); Exh. 18 (P. Capala Dep., 95:22-96:2); Affidavit of Jennifer Capala in Opposition, sworn to January 3, 2019 ("J. Capala Aff.") ¶ 3.

Most damning of all, the Debtor essentially received nothing in return for transferring his interest in the Properties, which had a combined value estimated to be $2.25 million at the time, as well as relinquishing *his rights* to maintenance, although he only had $83,200 in wages the year prior while Jennifer Capala benefited from trust funds and gifts from her wealthy family. Kessler Decl., Exh. 11; J. Capala Aff. ¶¶ 6, 7, 9, 22, 23, 33.  To spritz an air of legitimacy on their fraudulent scheme, Jennifer Capala commenced an uncontested divorce on June 13, 2013, with neither party allegedly represented by counsel, and the Divorce Judgment, which references an agreement of the parties, dated December 11, 2013, that Defendants claim does not exist.[2]

---

[2] Jennifer Capala also submitted a hand marked-up version of the Separation Agreement, with an index number, in the divorce action on June 13, 2013.  Kessler Decl., Exh. 5.

Kessler Decl., Exhs. 5, 7.  Five years after the divorce and after the Trustee commenced this adversary proceeding to seek to have the blatant fraudulent conveyance undone, Jennifer Capala sought to retroactively modify the initial Divorce Judgment in order to alter the terms of the consideration relevant to the claims in this litigation, so that Defendants could better their position and change the facts in their favor.  Kessler Decl., Exhs. 14, 15, 16.

In the face of this aforementioned evidence of fraud, Defendant Jennifer Capala insists that that the most lucrative of the Properties she received without fair consideration in the Separation Agreement, the Frost Street Property, had been purchased and improved with her separate marital funds.[3]  Yet that is no defense to the Trustee's fraudulent conveyance claims under DCL §§ 276 and 273-A.  There is no dispute that Jennifer Capala, as the moneyed spouse, was the driving force in the acquisition of the Properties and the couple may have considered them to be "hers."  That sentiment however, is irrelevant on the motions because it is not supported by evidence produced by Defendants.  Further, it is undisputed that the Debtor had a valuable interest in the Properties, which he gave up, along with any right to maintenance, without fair consideration in return.  Jennifer Capala argues that the Debtor received a waiver of an obligation to pay for their children's education, but that is illusory because educational assistance is not mandatory under New York's Domestic Relations Law and Jennifer Capala has already admitted that the children's education has been and is continuing to be paid through rental income and gifts from her wealthy family.

Desperate to avoid the consequences of their actions, Defendants argue that the Divorce Judgment conclusively establishes that the Debtor received reasonably equivalent value and,

---

[3]  Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp. Mem."), at 10-15; Defendant's Brief in Support of Their Cross Motion for Summary Judgment ("Def. Cross Mem"), at 10-14.  While Defendants submit an opposition brief (Docket No. 80) and a brief in support of their cross-motion (Docket No. 75), the legal arguments in both are identical and are addressed in total herein.

thus, a fraudulent conveyance did not occur.  Yet that argument is irrelevant to a DCL § 276 claim where actual fraudulent intent is shown, as the Trustee has already shown in the moving papers.  With respect to a claim under DCL § 273-A, the Divorce Judgment does not protect Defendants from the consequences of their fraudulent scheme because the Trustee has already presented extrinsic evidence of fraud as noted above.

Therefore, because no trier of fact could find that the Debtor's conveyance to Defendant Jennifer Capala of the Properties was not made with actual intent to hinder, delay or defraud his creditors, and consequently the conveyances were fraudulent under DCL § 276 or that the conveyance was made for "fair consideration," under DCL § 273-A, the Trustee is entitled to summary judgment to avoid the fraudulent transfers, dismiss Defendant Jennifer Capala's Separate Property affirmative defense, and the denial of Defendants' cross-motion for summary judgment in its entirety.

## ARGUMENT

I.   **Plaintiff Is Entitled to Summary Judgment On His Fraudulent Conveyance Claims and Defendants' Cross-Motion Should be Denied Because the Evidence of Fraud Submitted on the Motion is Not Overcome by the Divorce Judgment**

As detailed in Trustee's moving papers, Plaintiff is entitled to summary judgment under DCL § 276 because there is ample evidence of "badges of fraud" supporting actual fraudulent intent.  Summary judgment is also proper for the DCL § 273-A claim because there was a lack of fair consideration and good faith in the transfers.  Pl. Mem., at 8-12.  On these issues, Defendants premise their opposition and cross-motion solely on the case, *In re Zerbo*, 397 B.R. 642 (Bankr. E.D.N.Y. 2008), in order to argue that their collusive Divorce Judgment immunizes their

fraudulent conduct.[4]  *See* Def. Opp Mem., at 15-24; Def. Cross Mem., at 14-23.  Defendants'
argument fails for two reasons.

**First**, *In re Zerbo* is wholly inapposite because, unlike the instant case, the resultant
settlement agreement and divorce judgment were the byproduct of a "contentious litigation"
lasting over a year and the trustee therein had not provided evidence of "badges of fraud" to
support his fraudulent conveyance claim under DCL § 276.  397 B.R. at 646, 650.

**Second**, the *In re Zerbo* court concluded that for a non-DCL § 276 claim, absent extrinsic
evidence of fraud or collusion, a settlement agreement incorporated into a divorce judgment
conclusively establishes reasonable equivalent value.  *Id.*, at 654.  Here, to the contrary, (i) there
is extensive extrinsic evidence of collusion and fraud; (ii) because the Trustee has presented the
badges of fraud under DCL § 276, reasonable equivalent value is irrelevant; and (iii) there was
no valid consideration in the Debtor relinquishing his substantial interest and rights.

### a.      *In re Zerbo* is Wholly Inapposite and Irrelevant to Resolution of the Motions

Defendants seek to use *In re Zerbo* as both a shield and a sword in not only demanding
the denial of the Trustee's summary judgment motion, but also the granting of their cross-motion
for summary judgment to dismiss the complaint against them.  The decision in *In re Zerbo*
provides support for neither as the case involves a far different set of facts and issues than the
ones before this Court.

---

[4]      Defendants' Counter Statement of Facts in Opposition to Plaintiff's Motion (Docket No. 76) should be
disregarded and each of the paragraphs in Plaintiff's Statement of Material Facts deemed admitted because the
denials contained in Defendants' Counter Statement fail to cite to admissible evidence.  *See Franklin v. Liberty
Lines Transit, Inc.*, 2016 WL 1078283, at *9 n.17  (S.D.N.Y. Mar. 17, 2016) ("Plaintiff's conclusory denial of this
paragraph of Defendants' 56.1 Statement, without citation to any evidence, requires the Court to deem it admitted
for purposes of this motion"), *aff'd*, 685 F. App'x 41 (2d Cir. 2017); *Davies v. New York City Dep't of Educ.*, 2013
WL 1245444, at *1 n.1 (S.D.N.Y. Mar. 27, 2013) ("[B]ecause Davies' 56.1 counter-statement consists almost
entirely of admissions or conclusory denials not supported by citations to evidence, the material facts presented by
Defendants are undisputed and deemed admitted"), *aff'd*, 563 F. App'x 818 (2d Cir. 2014).

Specifically, the debtor husband in *In re Zerbo* filed for divorce on January 8, 2002, and while both sides were represented by legal counsel, the parties engaged in a "contentious litigation" for over a year.  397 B.R. at 646.  After a "considerable amount of negotiation and compromise," the parties entered into a settlement agreement on September 19, 2003. *Id*. Pursuant to their settlement agreement, the debtor transferred all of his rights, title and interest in the marital residence to the defendant-wife and the divorce judgment incorporated the settlement agreement by reference and was entered on December 10, 2003.  *Id.*  The debtor subsequently filed for bankruptcy on March 15, 2004, and the bankruptcy trustee commenced an adversary proceeding to have the transfer of the marital residence undone as a fraudulent conveyance under DCL § 276 as well as DCL §§ 273, 275, 278 and 279 and Bankruptcy Code §§ 547 and 548.

Initially, the bankruptcy court rejected the claims under DCL § 276 because the trustee therein had failed to provide any evidence that the transfers were made with an intent to defraud or were otherwise collusive, *i.e.*, the trustee did not present any badges of fraud.  397 B.R. at 650.  In light of that, the bankruptcy court proceeded to analyze the trustee's other claims that the transfer of the interest was not made with fair consideration under DCL § 273 and without reasonably equivalent value under Bankruptcy Code § 548.  The court concluded that in light of the transfer of the interest of the marital residence having occurred pursuant to a negotiated settlement reached to resolve a contentious divorce litigation, the divorce judgment incorporating the settlement agreement conclusively established the reasonably equivalent value because the trustee had failed to present extrinsic evidence of fraud or collusion among the divorcing parties. *Id.*, at 654.

Besides involving a divorce, the facts in *In re Zerbo* could not be more different from the present case.  Unlike *In re Zerbo*, there was no contentious divorce litigation where both sides

were represented by counsel and a settlement agreement resulted from extensive negotiation. Here, Jennifer Capala alleges that she personally prepared the Separation Agreement on June 3, 2013, a mere three weeks after the verdict in the *Gortat* Litigation, without any negotiation or resistance by the Debtor concerning its terms.  J. Capala Aff., ¶¶ 49, 51; *see also* Kessler Decl., Exh. 4.  In fact, Jennifer Capala states that the Debtor signed the Separation Agreement immediately after reading it and the Debtor even admits that he "did not negotiate it with her."  J. Capala Aff., ¶ 51; Affidavit of Pawel Capala in Opposition, sworn to January 3, 2019 ("P. Capala Aff."), ¶ 7.  Jennifer Capala proceeded to commence the non-contested divorce action on June 13, 2013, six days before the entry of the *Gortat* Judgment, and obtain the divorce judgment five months later.  J. Capala Aff., ¶ 52; Kessler Decl., Exhs. 2, 7.

In addition, unlike *In re Zerbo*, the Trustee here has presented the badges of fraud in his moving papers to support his claim under DCL § 276, which Defendants make no effort to overcome.  Instead, Defendants trumpet the importance of *In re Zerbo*, while ignoring that the case has no bearing on a DCL § 276 claim because determining reasonably equivalent value or proper consideration is not required for such claim.  Further, with respect to the Trustee's non-DCL § 276 claim, the Divorce Judgment does not conclusively establish reasonably equivalent value because, as discussed in more detail below, there is extrinsic evidence of fraud and collusion.

   **b.     Extrinsic Evidence of Fraud and Collusion Exist**

It is well settled that "the dissolution of marriage 'was certainly never intended to be a vehicle to effect a fraudulent end, or to transmute that which would otherwise be fraudulent into something lawful.'" *United States v. Barrier Indus., Inc.*, 991 F.Supp. 678, 681 (S.D.N.Y. 1998) (citations omitted).  As well, "both federal and New York courts have recognized that the use of a collusive divorce proceeding to transfer assets between spouses results in a fraudulent

conveyance of property that should be set aside." *United States v. Mongelli*, 857 F.Supp. 18, 21 (S.D.N.Y. 1994). Further, "[r]epeatedly, debtors operating businesses which have become mired in debt have tried to make use of corporations, owned by themselves, or a wife, daughter, or son, to preserve their business and remove their assets from the reach of creditors" and "[e]qually consistently, the courts have condemned such efforts and directed the restoration of the converted assets to the creditors." *In re Checkmate Stereo & Elecs., Ltd.*, 9 B.R. 585, 615 (Bankr. E.D.N.Y. 1981).

This is exactly the situation here. The Debtor, after already fraudulently transferring an asset of his company, collusively entered into a separation agreement and uncontested divorce with his wife Jennifer Capala to shield assets from the reach of the Debtor's creditors in the wake of the *Gortat* Litigation's adverse verdict. *See Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) ("[A]n allegedly fraudulent conveyance must be evaluated in context; '[w]here a transfer is only a step in a general plan, the plan must be viewed as a whole with all its composite implications'") (citations omitted).

While the *In re Zerbo* decision is only applicable to the Trustee's DCL § 273-A claim, there is extrinsic evidence of fraud and collusion that destroys any notion that the Divorce Judgment conclusively establishes equivalent value. Generally, examples of extrinsic evidence of fraud for fraudulent conveyance claims in bankruptcy cases include transfers in reaction to a judgment against the debtor (*Ford v. Poston*, 773 F.2d 52, 55 (4th Cir. 1985)); where the debtor continued to use the property transferred (*In re Elholm*, 80 B.R. 964, 970–71 (Bankr. D. Minn. 1987)); where the debtor would be rendered insolvent by the transfer (*Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 876 (8th Cir. 1988)); and where the pre-bankruptcy planning was

accompanied by concealment or conduct is calculated to mislead creditors (*In re Beckman*, 104 B.R. 866, 871 (Bankr. S.D. Ohio 1989)).[5]

In the present case, the litany of evidence is as follows:

(1)      As determined by the court in the *Gortat* Litigation, a few months prior to the transfers to Jennifer Capala, the Debtor and his brother had committed a fraudulent transfer with both fraudulent intent and for lack of fair consideration in causing the Capala Brothers, Inc. to transfer the Withers Street Property on February 20, 2013, a mere two weeks after a trial date had been scheduled where they knew the possibility that they would be subject to a substantial judgment.  Kessler Decl., Exh. 10, at 9, 16, 18, 19.

(2)      On May 28, 2013, two weeks after the jury handed down its verdict and just over two weeks prior to the *Gortat* Judgment, Jennifer Capala incorporated Fire Hill Holdings, of which she is the sole member, to take title to the Properties in which the Debtor intended to transfer his interest.  Kessler Decl., ¶ 3, Exh. 3.

(3)      Jennifer Capala claims that she created Fire Hill Holdings to hold title to the Frost Street and Hillsdale Properties because "they were business properties with attendant liabilities" (J. Capala Aff. ¶ 74), but the Frost Street Property had been a "business property" since at least 2007 (*id.*, ¶ 12) and the Hillsdale Property since 2002 (*id.*, ¶ 25).  For the prior 6 years on one property and 9 years on the other, the Debtor and Jennifer Capala saw no need to use an LLC despite the properties being for "business" and having "attendant liabilities."

(4)      On June 3, 2013, a week after Jennifer Capala's incorporation of Fire Hill Holdings, and a mere two weeks prior to the *Gortat* Judgment being entered, the Debtor and Jennifer executed the Separation Agreement whereby the Debtor purported to transfer to his wife the entirety of his interest in the Properties.  At that time, the Properties had a combined estimated value of $2.25 million and exceeded the $293,212.41 money judgment entered jointly and severally against the Debtor. Kessler Decl., ¶ 4, 5, Exhs. 2, 4, 5.

(5)      The Separation Agreement was not the product of negotiation. J. Capala Aff., ¶¶ 49, 51; P. Capala Aff., ¶ 7.

(6)      Upon acquiring the full interest in the Properties, pursuant to the Separation Agreement, Jennifer Capala immediately transferred the Properties from herself to Fire Hill Holdings, which occurred after the jury verdict but before the judgment was entered against the Debtor.  Kessler Decl., Exhs. 1, 2, 6.

---

[5] While the cited cases involved debtors fraudulently transferring assets to claim exemptions, the principles are the same in finding "extrinsic" evidence of fraud or collusion, *i.e.*, evidence outside the fact that the transaction occurred.  *See Black's Law Dictionary, Extrinsic Fraud* (10th ed. 2014).

(7)     Despite the purported transfer of his marital interest in the Spencertown Property, the Debtor continues to reside there and claim it for his homestead exemption. Kessler Decl., Exh. 18 (P. Capala Dep., 95:22-96:2).

(8)     The Debtor and Jennifer Capala still live at the Spencertown Property with their children.  Kessler Decl., Exh. 17 (J. Capala Dep., at 139:5-11); J. Capala Aff., ¶ 3.

(9)     Without the value of the assets comprising his portion of the transferred properties, the *Gortat* Judgment rendered the Debtor personally insolvent and unable to satisfy the judgment. *See* Kessler Decl., ¶ 11; Exh. 11 (2012 Capala Joint Tax Returns) (indicating that the Debtor earned, for CY 2012, $83,200 in wages, and received rental income from the Frost Street Property approximately $20,500 (half of the total rental income reported)).

(10)    The transfers were made for no present, tangible consideration. Kessler Decl., Exhs. 7, 17 (J. Capala Dep., at 159:6-11).

(11)    The divorce proceeding was uncontested and lasted less than six months. Kessler Decl., Exhs. 5, 7.

(12)    Five years after the fact and after this adversary proceeding was commenced, Jennifer Capala sought to retroactively modify the initial Divorce Judgment in order to alter the terms of the consideration relevant to the claims in this litigation, so that Defendants could better their position and change the facts in their favor.  Kessler Decl., Exhs. 14, 15, 16.

Thus, Defendants may not rely on the Divorce Judgment, belatedly amended or otherwise, to immunize their fraudulent conduct and proclaim that the Separation Agreement provided for reasonable equivalent value.  In any event, as noted above, the consideration given by Jennifer Capala in return for full interest in the Properties was illusory.

Jennifer Capala claims in her affidavit that the Debtor received consideration for the transfers in the form of "waivers of any and all support obligations for me or our Children, my sole payment of their primary, secondary and college educations" and "the retention of his business."   J. Capala Aff., ¶ 16.  All three of these false claims of consideration are easily dispensed with.

10

**First**, Jennifer Capala admits in her affidavit that she was the moneyed spouse, coming from a wealthy family and benefitting from trust funds and family gifts (*id.*, ¶¶ 6, 7, 9, 22, 23, 33), while the Debtor's income was "unstable" for at least a decade and he did not significantly contribute to the family finances (*id.*, ¶¶ 5, 12 and 46).  Indeed, the Debtor's yearly wages were $83,200 in 2012 (Kessler Decl., Exh. 11), while the present net worth of Jennifer Capala's mother is in excess of $10 million (J. Capala Aff., ¶ 23).

As such, if the divorce proceeding had been contested rather than collusive, the Debtor would have pursued maintenance *against* Jennifer Capala, but, instead, relinquished any claim to potentially millions of dollars in the Separation Agreement.  *See Alvares-Correa v. Alvares-Correa*, 285 A.D.2d 123, 126, 726 N.Y.S.2d 668, 670 (1st 2001) ("A party's interest in trusts can be taken into account when making maintenance and child support awards"); *Chapman v. Chapman*, 28 A.D.2d 1028, 1028, 283 N.Y.S.2d 782, 782 (3d Dep't 1967) (affirming family court's support award which took into consideration the respondent's income as well as his capital assets and a certain trust fund of which is he was a beneficiary).[6]

Tellingly, Jennifer Capala admits that the Debtor did not have an attorney when entering into the Separation Agreement.  J. Capala Aff., ¶ 51.  Any competent counsel would have advised the Debtor that he was giving up far greater value than what he was receiving in the Separation Agreement and what the Debtor and Jennifer Capala had schemed was a fraudulent conveyance in light of the impending *Gortat* Judgment.

**Second**, as detailed in the Trustee's motion, because the support for a child's education is not mandatory, it cannot be said that the Debtor received value for being relieved of paying what

---

[6]  The court in *Alvares-Correa* made clear that the defendant's interest in the trust property was not being evaluated for purposes of equitable distribution, but, rather, determine whether he could afford maintenance and child support. *Alvares-Correa v. Alvares-Correa*, 285 A.D.2d at 126, 726 N.Y.S.2d at 670.  Similarly, while the Debtor could not seek equitable distribution of Jennifer Capala's trusts, a court would consider the trusts in determining what Jennifer Capala would have to pay in maintenance.

he was not obligated to pay.  Pl. Mem., at 17.  In addition, the children's educational expenses are already being paid for with the rental income from the Frost Street Property and gifts from Jennifer Capala's mother.  Kessler Decl., Exhs. 7, 17 (J. Capala Dep., at 159:6-11).

**Third**, Jennifer Capala's interest in Capala Brothers, Inc. would be fractional, given that it would be no more than 25% of a company that paid the Debtor only $83,200 annually and was subject to an impending substantial judgment in the *Gortat* Litigation compared to the Debtor relinquishing his interest in real estate then valued $2.25 million as well as maintenance.  *See* Kessler Decl., Exh. 17 (J. Capala Dep., at 60:5-7).

In light of the foregoing, the Trustee is entitled to summary judgment on his claims and the denial of Defendants' cross-motion.

## II.     Plaintiff is Entitled to Summary Judgment Dismissing Defendant Jennifer Capala's Separate Property Affirmative Defense

Defendants devote half of their opposition and cross-motion briefs offering a legal dissertation on the meaning of "separate property" under Domestic Relations Law, which misses the point entirely.  *See* Def. Opp Mem., at 10-15; Def. Cross Mem., at 10-14.  Whether the Frost Street Property was purchased with and improved by funds that are deemed separate or marital property is irrelevant to the Trustee's DCL §§ 276 and 273-A claims because it is undisputed that the Debtor maintained a significant interest in that property, otherwise there would be no need to transfer the interest pursuant to the Separation Agreement.  Jennifer Capala cannot have it both ways: she cannot claim that the transfers in the Separation Agreement were not fraudulent because the Debtor received fair consideration for his interest in the property, but also claim that he had no interest in the property to begin with because it does not constitute marital property.

12

a. **The Frost Street Property was Marital Property and Jennifer Capala Fails to Submit any Competent Evidence to be Entitled to a Separate Property Credit**

Under settled law, the Frost Street Property was marital property. *See Spera v. Spera*, 71 A.D.3d 661, 664, 898 N.Y.S.2d 548, 551 (2d Dep't 2010) ("Property acquired during the marriage is presumed to be marital property"). It is undisputed that (i) Defendants were married in 1994; (ii) the Frost Street Property was purchased two years later in 1996; and (iii) the Frost Street Property was the couple's original marital residence for nine years. J. Capala Aff., ¶¶ 7-8, 12. In fact, the Frost Street Property was deeded in both Defendants' names (Kessler Decl., Exh. 6), which eliminates any contention that it was separate property. *Dabo v. Sibblies*, 142 A.D.3d 459, 461, 36 N.Y.S.3d 648, 650 (1st Dep't 2016) ("Supreme Court correctly determined that the marital residence became marital property upon the wife's transfer, during the marriage, of the property from her sole name to the parties' joint names"); *Diaco v. Diaco*, 278 A.D.2d 358, 359, 717 N.Y.S.2d 635, 636 (2d Dep't 2000) ("The plaintiff, by placing the marital residence in both names, changed the character of the property to marital property").

Moreover, under Defendants' clumsy fraudulent conveyance scheme, Jennifer Capala created Defendant Fire Hill Holdings (the ultimate titleholder for the Frost Street Property), *during* the marriage, which made Fire Hill Holdings marital property. In Defendants' own cited case, *Scher v. Scher*, 91 A.D.3d 842, 938 N.Y.S.2d 317 (2d Dep't 2012) (Def. Opp. Mem., at 15), the court held that the LLC the husband held in his own name was marital property because he acquired his interest therein during the marriage and before the commencement of the divorce action, which entitled the wife to a 50% distributive share of the husband's interest in the LLC. 91 A.D.3d at 845–46, 938 N.Y.S.2d at 321–22.

As a result, Defendant Jennifer Capala is left with arguing for a separate property "credit," based on the $80,000 down payment and $108,000 in improvements allegedly paid

13

from separate funds against the Frost Street Property's then value of $1.9 million.  Even with that credit, the Debtor's 50% interest in the remainder of the then value of the Frost Street Property ($856,000) is still greater than the *Gortat* Judgment.

Regardless, Jennifer Capala fails to offer any documentary evidence in her opposition or cross-motion papers to trace the use of purported separate property to the purchase or renovations of the Frost Street Property and, thus, the Separate Property affirmative defense must be dismissed.  *See Gafycz v. Gafycz*, 148 A.D.3d 679, 680, 48 N.Y.S.3d 464, 466 (2d Dep't 2017) ("As the court properly found, the defendant failed to establish that he purchased his half-interest in the properties using separate, as opposed to marital, funds"); *Maddaloni v. Maddaloni*, 142 A.D.3d 646, 652, 36 N.Y.S.3d 695, 702 (2d Dep't 2016) (defendant not entitled to a separate property credit for property acquired during marriage because the "defendant failed to present sufficient evidence tracing the source of any funds used to purchase the assets at issue to his separate property"); *Golden v. Golden*, 98 A.D.3d 647, 649–50, 949 N.Y.S.2d 753, 756 (2d Dep't 2012) ("Contrary to the defendant's contention, the Supreme Court correctly denied his application to receive a credit for his separate property contribution to the down payment on the parties' marital residence. The defendant failed to meet his burden at trial of establishing that the funds for the down payment came from his separate funds").[7]

In fact, the record evidence tells a very different story.  The majority of the documents purporting to justify the separate property defense are simply receipts, not proof of payment.  *See* Defendants' Exh. F; Reply Declaration of Scott M. Kessler, dated February 1, 2019, ("Reply Kessler Decl."), Exh. 1 (J. Capala Deposition Exh. 6).  However, several, if not most, of the

---

[7]  It should not be lost on the Court that the aforementioned arguments for the Debtor's interest to the Frost Street Property as well as maintenance, would have been made by competent counsel for the Debtor if the divorce proceeding had not been the product of collusion.  That the Debtor did not pursue his rights to such considerable assets while still claiming one of the properties under a homestead exemption is further proof that a fraudulent conveyance occurred.

actual checks produced by Defendants show that the payments for the renovation to the property at 246 Frost Street were drawn from the *joint banking account of Jennifer and Pawel Capala*, not from Jennifer Capala's investment or other individual account.  Reply Kessler Decl., Exh. 1 (J. Capala Deposition Exh. 6 at 23, 31-32, 39, 51, 57, 59).   Despite the arguments made in Defendants' cross-motion and in opposition to the Trustee's motion for summary judgment, Jennifer Capala admitted, during her deposition, that the funds used to purchase and renovate 246 Frost Street came from her joint banking account with Pawel Capala.  *See* Kessler Decl., Exh. 17 at 87:15-23; Reply Kessler Decl., Exh. 2 (J. Capala Deposition Transcript at 90:21-93:10).

Thus, all Jennifer Capala has is her self-serving deposition testimony and opposition affidavit, but that cannot overcome the marital presumption.  *See Rosenberg v. Rosenberg*, 145 A.D.3d 1052, 1055, 44 N.Y.S.3d 489, 492 (2d Dep't 2016) ("[D]efendant's testimony that the funds used to acquire the boat were his separate property, unsupported by documentary evidence, was insufficient to overcome the marital presumption"); *Steinberg v. Steinberg*, 59 A.D.3d 702, 704, 874 N.Y.S.2d 230, 232 (2d Dep't 2009) ("[T]he defendant's testimony that the source of the assets could be traced to premarital property, unsupported by documentary evidence, was insufficient to overcome the marital presumption").

Lastly, Jennifer Capala's reliance on the report of her expert, Dr. Robert Jones, to argue the separate property defense and that the Debtor received reasonably equivalent value by being free of educational expenses, is of no moment.  Def. Opp., at 6, 7, 8, 9, 13-15, 19, 21.  The assumptions Defendants' expert made simply eviscerate the opinion because those assumptions do not exist in the present case.  As detailed in the Trustee's moving memorandum, Defendants' expert assumed that the $80,000 down payment and $108,000 renovation came from separate

property although there was no evidence to support that and, by law, testimony alone cannot overcome the marital property presumption.  Pl. Mem., at 21-22.  Defendants' expert also assumed that educational expenses are mandatory, which they are not. Pl. Mem., at 16-17.  Also, Defendants' expert ignored the fact that based on the Debtor's modest income as set forth in the parties' last joint tax return, the educational expenses, which were already being paid by rental income and family gifts, far exceeded the Debtor's after-tax income without any consideration of living expenses for either him or his children.  Kessler Decl., Exh. 11.  In essence, the Debtor "waived" something he could never afford or was never expected to afford, let alone any maintenance to Jennifer Capala, while giving up his significant interest in the Frost Street Property and his right to maintenance.

> **b.** **None of Defendants' Cases Supports Denial of Plaintiff's Motion or the Granting of Defendants' Cross-Motion**

None of the cases relied upon by Defendants warrants a denial of the Trustee's motion or the grant of Defendants' cross-motion.  For example, in *Robertson v. Robertson*, 186 A.D.2d 124, 125, 588 N.Y.S.2d 43, 44 (2d Dep't 1992) (Def. Opp. Mem., at 5, 13), the court merely afforded the wife a credit for the down payment made from separate property toward the purchase of the couple's apartment, and awarded the husband 50% share of the net proceeds of the sale of the apartment.  In both *Price v. Price*, 69 N.Y.2d 8, 17–18, 511 N.Y.S.2d 219, 224 (1986) (Def. Opp. Mem., at 6, 13, 14) and *Hartog v. Hartog*, 85 N.Y.2d 36, 46, 623 N.Y.S.2d 537, 542 (1995) (Def. Opp. Mem., at 15), the Court of Appeals held that appreciation of separate property is marital property if it is attributable in part to either the contributions or efforts of the nontitled spouse or the active efforts of the titled spouse during the marriage.

In *Tsigler v. Kasymova*, 73 A.D.3d 1159, 1159–60, 902 N.Y.S.2d 128, 129 (2d Dep't 2010) (Def. Opp. Mem., at 6, 13, 14), the court held that the plaintiff had rebutted the

presumption of marital property through documentary evidence.  In *Leva v. Leva*, 155 A.D.3d 707, 710, 65 N.Y.S.3d 549, 551 (2d Dep't 2017) (Def. Opp. Mem., at 11), the court held that certain properties acquired by the defendant in his sole name during the marriage were presumed to be marital property, and that the defendant failed to rebut that presumption.

Likewise, in *Halse v. Halse*, 93 A.D.3d 1003, 1004, 940 N.Y.S.2d 353, 355 (3d Dep't 2012) (Def. Opp. Mem., at 11), the court held that a checking account was marital property entitling the defendant to half the value in the absence of conclusive proof that the checking account had increased in value as a result of the addition of the plaintiff's separate property.  In *Heine v. Heine*, 176 A.D.2d 77, 83–84, 580 N.Y.S.2d 231, 235 (1st Dep't 1992) (Def. Opp. Mem., at 12), the court concluded that the fact that the townhouse had been purchased a mere six months after the marriage supported the husband's claim that his separate property was provided for the source of down payment.  In *Foppiano v. Foppiano*, 166 A.D.2d 550, 551, 560 N.Y.S.2d 831, 832–33 (2d Dep't 1990) (Def. Opp. Mem., at 12), the court held that the plaintiff had proved that the fish market she purchased came from separate property.  Lastly, in *Belilos v. Rivera*, 164 A.D.3d 1411, 1412, 84 N.Y.S.3d 536, 539 (2d Dep't 2018) (Def. Opp. Mem. 13), the plaintiff submitted checks from her uncle's estate to prove that she inherited the sum of $150,000 from her uncle and the sum was not marital property.

Therefore, the Plaintiff's Motion for Summary Judgment to (i) dismiss the Defendants' Separete Property Defense and (ii) deny Defendants' cross-motion for summary judgment should be granted.

## CONCLUSION

Based on the foregoing and the Trustee's prior submissions, Plaintiff respectfully requests this Court enter an Order (i) granting the Plaintiff's Motion for Summary Judgment in its entirety, and, accordingly, (ii) avoiding the fraudulent transfers of the Properties; (iii) dismiss

Defendant Jennifer Capala's Separate Property affirmative defense; (iv) deny Defendants' cross-motion for summary judgment in its entirety; and (v) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 1, 2019

                                   **AKERMAN LLP**


                                   By:   */s/Scott M. Kessler*
                                         John P. Campo
                                         Scott M. Kessler
                                         666 Fifth Avenue, 20th Floor
                                         New York, New York 10103
                                         Tel. No. (212) 880-3800

                                         *Counsel for the Plaintiff John S. Pereira, Chapter 7*
                                         *Trustee for the bankruptcy estate of Pawel Capala*

18